IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| Idania M. ACOSTA REYNOSO, *et al.,* | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | Case No.:8:26-CV-01314-VMC-NHA |
| | § | |
| | § | |
| U.S. Citizenship and Immigration | § | |
| Services, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I.  INTRODUCTION

Plaintiffs in this action are 129 Cuban nationals and citizens who are all *prima facie* eligible for legal permanent residency in the United States, pursuant to the Cuban Adjustment Act (CAA) of 1966, Pub. L. No. 89-732, 80 Stat. 1161 (1966), and whose bona fide applications for green cards are being unlawfully delayed and withheld by Defendants as a direct result of the Defendants' harmful, targeted, and unconstitutional policies as represented in a series of policy memoranda (PM) issued by Defendant USCIS as part of the Trump Administration's current immigration enforcement priorities.

### II.  LEGAL STANDARD

This Court may grant temporary and preliminary injunctive relief upon a showing by Plaintiffs that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008); see also *Schiavo ex.rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). All four requirements listed above must be satisfied. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). When the government is a party, the balance of equities and public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

As demonstrated below, Plaintiffs satisfy each element. First, Plaintiffs have a likelihood of success on the merits, as the Defendants have a non-discretionary duty to adjudicate Plaintiffs' pending Form I-485 ("CAA petitions") and Form I-765 ("EAD petitions") applications pursuant to the route to legal status created by Congress under the CAA. Defendants have failed to process the Plaintiffs' bona fide applications for a period of time in excess of Defendant USCIS's own published processing times. Further, as of December 2025, the Defendants have only aggravated this harm through a series of unlawful and targeted policy memoranda (PM) that significantly prejudice the pending CAA and EAD petitions of the 129 Plaintiffs in this lawsuit. See *Exhibits 1 to 3* (USCIS Policy Memorandum 602-0192, 602-0194, 602-0199, respectively). Second, Plaintiffs respectfully submit that they are likely to suffer irreparable harm, as the Defendants' unreasonable delay has culminated in an indefinite adjudication hold ("Adjudication Hold Policy" or "Benefits Hold Policy") since December 2025 on all bona fide applications, like those filed by Plaintiffs, depending on the applicant's nationality. This indefinite Adjudication Hold subjects thousands of noncitizens, including the 129 Plaintiffs in this action, to an immigration limbo, whereby these individuals are *prima facie* eligible for legal resident status in the United States, but by virtue of the Government's intentional inaction, they are prevented from adjusting to a legal immigration status, and instead, are exposed to an ever-increasing risk of detention and removal from the United States by Immigration and Customs Enforcement (ICE). Defendant USCIS now causes further irreparable harm by way of their most recent PM 602-0199, published on May 22,

2026, which aims to upend decades of congressionally mandated routes to adjustment of status, including the CAA, and that therefore only aggravates the direct, ongoing harm suffered by the 129 Plaintiffs in this lawsuit. Finally, the Plaintiffs submit that, as will be demonstrated below, the circumstances underlying this action are such that the balance of the equities tip in the Plaintiffs' favor, and an injunction is in public interest.

## ARGUMENT

### I. Plaintiffs Have a Substantial Likelihood of Success on the Merits

Plaintiffs' claims against Defendants arise under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361, as a result of the direct harm caused by Defendant USCIS's unreasonable delay in adjudicating the Plaintiffs' pending CAA and EAD petitions, and which, as of December 2025, has culminated in the Defendants unlawfully withholding their adjudication of these petitions altogether. This harm is ongoing and unfettered, as Defendants continue to indefinitely withhold adjudication on thousands of bona fide petitions, like Plaintiffs, by and through the issuance of several unlawful policy memoranda. Section 706(1) of the APA authorizes this Court, as a reviewing court, to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Further, mandamus relief is appropriate and may be granted by this Court when (1) a plaintiff has a clear right to the relief requested, (2) the defendant has a clear duty to act, and (3) no other adequate remedy is available. *Cash v. Barnhart*, 327 F3d 1252, 1258 (11th Cir. 2003).

Here, Plaintiffs are substantially likely to succeed on their claims. The governing statute and regulations impose on Defendants a non-discretionary duty to adjudicate Plaintiffs' applications within a reasonable time. Defendants have failed to perform that duty for periods exceeding thirteen, eighteen, and in some instances twenty-eight months. The ongoing harm

suffered by the Plaintiffs in this action is the direct result of the Defendants' unreasonable delay and a series of arbitrary, capricious, and otherwise unlawful policies imposed by the Defendants through PM 602-0192, PM 602-0194, and PM 602-1099.

### a) *Defendants Owe Non-Discretionary Duty to Adjudicate Plaintiffs' Applications*

Relief under Section 706(1) is available where an agency has failed to take "a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Although USCIS retains discretion over whether to grant or deny an adjustment application, the decision to adjudicate is itself non-discretionary. *See Villa v. US Dep't of Homeland Sec.*, 607 F. Supp. 2d 359, 366 (N.D.N.Y. 2009). District courts within the Eleventh Circuit have likewise recognized that USCIS has a "clear, non-discretionary duty to adjudicate applications for adjustment of alien status" and, under the APA, "must do so within reasonable time." *Ren v. Mueller*, No. 6:07-cv-790-Orl-19DAB, 2008 U.S. Dist. LEXIS 4300, at *6-7 (M.D. Fla. Jan 20, 2008); see also 5 U.S.C. § 555(b) ("Within reasonable time, each agency shall proceed to conclude a matter presented to it.").

Defendant USCIS's own implementing regulations independently impose this duty. With respect to applications for adjustment of status, based on the plain meaning of the text, Defendant USCIS has an affirmative, non-discretionary duty to adjudicate applications filed with their agency, as the regulations stipulate that "….[t]he applicant *shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial." [emphasis added] 8 C.F.R. § 245.2(a)(5)(i). Likewise, with respect to applications for employment authorization, Defendant USCIS is also obligated to act according to an affirmative duty to adjudicate, as applicants "…*shall* be notified of the decision and issued an employment authorization document" upon approval or notified "in writing of the decision and the reasons for the denial" upon denial. [emphasis added]

8 C.F.R. §§ 274a13(b), (c).

Plaintiffs are 129 Cuban nationals and citizens, all of whom: (1) were lawfully admitted or paroled into the United States; (2) have since accumulated over one-year physical presence in the U.S.; (3) have filed applications for adjustment of status with USCIS ("CAA petitions"), based on their prima facie eligibility to do so pursuant to the Cuban Adjustment Act ("CAA"), Pub. L. No. 89-732, 80 Stat. 1161 (1966); (4) have filed petitions for employment authorization (EAD petitions) pursuant to their pending CAA petitions; (5) have been subjected to an unreasonable delay in the adjudication of their petitions by USCIS; and none has a pending statutory or regulatory bar to adjudication. The duty to act is clear, and the conditions for performance are met.

### b) *Plaintiffs' CAA and EAD Petitions are Unreasonably Delayed under the TRAC Factors*

To prevail under Section 706(1), Plaintiffs must also show that there is an unreasonable delay by the Defendants in the exercise of their non-discretionary duty to adjudicate the Plaintiffs' applications for adjustment of status and work authorization. The reasonableness of agency delay is assessed under the six-factor framework of *Telecommunications Research & Action Center v. FCC* F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"), which courts in this Circuit routinely apply. See *Nascimento v. U.S. Dep't of Homeland Sec.,* 689 F. Supp. 3d 1245 (2023).

First, the time the agency takes "must be governed by a 'rule of reason.'" *TRAC*, 750 F.2d at 80. According to USCIS's own published processing-time data, the agency's historic median for CAA-based Form I-485 applications has been approximately 6.5 months, and the median for the corresponding Form I-765 applications has been no more than 7 months. Plaintiffs' First Amend. Compl. ¶ 229-230. Plaintiffs' own applications have been pending for periods that range from eight months to several years, in most cases far exceeding the agency's own posted

benchmark. It is reasonable to believe that the agency would prioritize the adjudication of applications within its own processing guidelines, particularly when Congress has empowered the agency, and its Director, Defendant Edlow, with the statutory authority to pilot initiatives that eliminate and prevent backlog in the processing of immigration benefit applications (like those at issue in this lawsuit).[1] Instead, Defendant USCIS implements unlawful policies seemingly designed to delay and deter any adjudication on the bona fide applications for adjustment of status currently filed with the agency. Therefore, Defendants' delays in adjudicating Plaintiffs' CAA and EAD petitions are not within the bounds of any "rule of reason."

Second, Congress has provided "a timetable or other indication of the speed" it expects agencies to take. *TRAC*, 750 F.2d at 80. The APA itself requires agencies to conclude matters "within a reasonable time." 5 U.S.C. § 555(b). The Cuban Adjustment Act was designed specifically to provide Cuban nationals an expedited pathway to lawful permanent residence. Defendants' indefinite delay frustrates the purposes of each.

Third, this case involves far more than the type of ordinary "economic regulation" where longer delays may be tolerated. See *TRAC*, 750 F.2d at 80. The delays here directly affect Plaintiffs' "human health and welfare," *id*., including their ability to obtain lawful permanent residence, maintain employment authorization, travel internationally, reunite with family members, and live without an ongoing risk of detention by Immigration Customs Enforcement. Under *TRAC*, such interests weigh strongly against continued delay.

Fourth, requiring Defendants to adjudicate these 129 applications would not meaningfully

---

[1] *See* 6 U.S.C. 271: "The Director of the Bureau of Citizenship and Immigration Services is authorized to implement innovative pilot initiatives to eliminate any remaining backlog in the processing of immigration benefit applications, and to prevent any backlog in the processing of such applications from recurring, in accordance with section 1573(a) of title 8. Such initiatives may include measures such as increasing personnel, transferring personnel to focus on areas with the largest potential for backlog, and streamlining paperwork."

interfere with any higher or competing agency priorities. Defendants are not being asked to move Plaintiffs ahead of higher-priorities applicants. Before the adjudication hold issued in December 2025, Defendants routinely adjudicated CAA applications within months. Fifth, the prejudice caused by the delay is substantial and ongoing. As reflected in the accompanying declarations, Plaintiffs continue to suffer lost wages, missed employment opportunities, delayed family reunification, and the continuing risk of detention. And sixth, although Plaintiffs need not show impropriety to prevail under *TRAC*, see 750 F.2d at 80, the record here reflects more than ordinary administrative delay. Defendants have affirmatively adopted a policy of withholding adjudication through the Adjudication Hold memorandum itself. All six TRAC factors thus weigh against Defendants, and Plaintiffs are likely to succeed on their § 706(1) claim.

    *c)*    ***The Adjudication Hold Policy Constitutes Arbitrary, Capricious, and Unlawful Agency Action that Exacerbates the Ongoing Unreasonable Delay to Plaintiff's Pending CAA and EAD Petitions***

Defendants are expected to justify their inaction by relying on the Adjudication Hold Policy as established by PM-602-0192 (Dec. 2, 2025), PM-602-0194 (Jan. 1, 2026), and now, PM-602-1099 (May 21, 2026). However, these arbitrary, capricious, and unlawful policies subvert the underlying purpose of the Immigration and Nationality Act (INA) as established by Congress. Other federal district courts confronted with litigation arising from the same policies have likewise determined that, under the APA, Defendants' PMs are unlawful. *See Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 U.S. Dist. LEXIS 95243, at *32-55 (D. Mass. Apr. 30, 2026); *Saghafi v. Edlow*, No. 26-cv-100-GLR, 2026 U.S. Dist. LEXIS 91662, at *14-15(D. Md. Apr. 24, 2026); *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 U.S. Dist. LEXIS NEXIS 35751, 2026 WL 485490 (N.D. Cal. Feb. 20, 2026); *Bowser v. Noem*, No. 26-CV-10382-AK, 2026 U.S. Dist. LEXIS 40770, 2026

WL 555624 (D. Mass. Feb. 27, 2026).

    i.   <u>Defendants' Adjudication Hold Policy and Ongoing Unreasonable Delay are Subject to Judicial Review under the APA</u>

Defendants have a nondiscretionary duty to adjudicate the Plaintiffs' pending CAA petitions. *See* 8 U.S.C. § 1157(c)(2); 8 C.F.R. §207.7(a). However, the APA imposes a statutory requirement for federal agencies, including Defendants, to conclude matters presented to them "within a reasonable time". 5 U.S.C. §555(b), and the APA further empowers reviewing courts with the authority to "compel agency action unlawfully withheld or unreasonably delayed". 5 U.S.C. § 706(1). 241. Defendants' failure to adjudicate the Plaintiffs' CAA petitions constitutes an agency action unlawfully withheld or unreasonably delayed in violation of the Defendants' obligations under 5 U.S.C. § 706(1).

Additionally, under 5 U.S.C. § 706(2)(A), a reviewing court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Agency inaction is equally reviewable where, as here, the inaction is the product of an affirmative policy directive rather than the exercise of case-by-case discretion. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *Heckler v. Chaney*, 470 U.S. 821, 833 (1985) (noting that the presumption against reviewability of agency inaction is overcome where "the agency has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities"). Here, Defendants have done precisely that — issuing successive, escalating hold policies that function as a categorical bar to adjudication, but that are not a product of an individualized assessment of an applicant's statutory eligibility (or any equities relevant to their immigration status).

    ii.   <u>The Adjudication Hold Policy Is Contrary to Law Under INA § 245 and</u>

Congressional Intent

In enacting INA § 245, 8 U.S.C. § 1255, Congress established a statutory framework under which eligible applicants *shall* have their applications for adjustment of status adjudicated upon satisfaction of the enumerated requirements. The use of mandatory language in this framework reflects Congress's intent that USCIS has an affirmative and non-discretionary duty to adjudicate bona fide applications for adjustment of status that are filed with the agency pursuant to INA § 245. *See Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 328 (2014) ("An agency has no power to tailor legislation to bureaucratic policy goals by rewriting unambiguous statutory terms.").

The INA's definitional provisions further confirm this intent. INA § 101, 8 U.S.C. § 1101, establishes the foundational categories of aliens eligible for immigration benefits and reflects Congress's deliberate calibration of who may seek lawful status and when. By suspending adjudication of entire classes of applications through internal policy memoranda, Defendants effectively nullify this congressional framework and substitute their own — a power they do not possess. *See City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (agencies may only act within the bounds of the authority Congress has delegated).

### iii. The Adjudication Hold Policy Lacks a Rational Basis and Fails the Arbitrary and Capricious Standard

Under the narrow arbitrary and capricious review standard, an agency must "examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Further, "…an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* Defendants have not demonstrated a reasoned agency process through the proliferation of the PMs at issue in this lawsuit— PM-602-0192, PM-602-0194, and now PM-602-1099, all issued across a span of less than six months. Rather, the arbitrary, capricious, and unlawful PMs evidence a pattern of ad hoc policymaking designed to indefinitely defer the statutory obligations owed by Defendants, and particularly Defendant USCIS, to noncitizens like Plaintiffs. Defendants have offered no rational basis that justifies their blanket adjudication hold and deliberate inaction on the bona fide applications filed by Plaintiffs with Defendant USCIS. The Defendants' policies do not engage with the reliance interests of applicants, like Plaintiffs, who have waited months or years for adjudication, submitted substantial fees and documentation, or structured major life decisions around their pending applications. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (agency must consider "serious reliance interests" before changing course).

## II.    Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief

### a.    *Plaintiffs are At Significant Risk of Detention and Removal from the United States by Immigration and Customs Enforcement (ICE)*

To establish irreparable harm, Plaintiffs must show "an injury that cannot adequately be compensated" after the fact "by a later-issued damages remedy." *Schiavo*, 403 F.3d at 1225-26. The harm must be "actual and imminent," not "remote or speculative," *Siegel,* 234 F.3d at 1176, but it need not be quantifiable. See *Wreal*, 840 F.3d at 1247. Here, the 129 Plaintiffs in this action will suffer irreparable harm if this Court does not grant temporary and preliminary injunctive relief, as the Plaintiffs: (i) have a credible fear of arrest and removal from the United States by ICE; and (ii*)* face the loss of work authorization, forced family separation, and other severe consequences

that cannot be adequately compensated or remedied by any other form of relief.

Plaintiffs bring this lawsuit before the Southern District of Florida, and accordingly, most, if not all, Plaintiffs in this action also physically reside in South Florida. Since January 2025, ICE's Miami Field Office, which is responsible for ICE operations in Florida, Puerto Rico, and the Virgin Islands, has made 41,310 arrests, with an average of 120 daily arrests reported by the Miami field office.[2] Furthermore, there are currently over 60,311 noncitizens in detention with ICE as of April 4, 2026.[3] Over 70% of these individuals either have no criminal conviction or convictions for minor offenses (including traffic violations).

Each of the 129 Plaintiffs in this action has a pending application for legal permanent residence in the United States (or CAA petition, as referred to herein). These are bona fide applications that, but for Defendants' ongoing delay and unlawful policies, would be eligible for adjudication. However, the Defendants' adjudication hold does not merely delay the performance of a mandatory duty; it actively exposes Plaintiffs to the real risk of detention and removal by ICE, as the Defendants' unlawful policies effectively hold the Plaintiffs' bona fide applications in abeyance, for an indefinite period that has yet to be defined, and which Defendants have yet to justify by reference to a rational basis. Plaintiffs concede that a pending I-485, or CAA petition, alone does not confer lawful status or provide an affirmative shield against removal. See 8 U.S.C. § 1255(a); *Matter of Yauri*, 25 I&N Dec. 103 (BIA 2009). However, where adjudication is indefinitely suspended, Plaintiffs are left in a prolonged state of legal limbo — present in the United States without the benefit of a final determination on their status — making them vulnerable

---

[2] Americans for Immigrant Justice, *Newsletter – April 2026*, https://aijustice.org/2026/04/23/april-2026-newsletter/ (last accessed on June 4, 2026); *see also,* New York Times, *New Data Shows Where ICE Has Been Most Active This Year*, Mar. 20, 2026, https://www.nytimes.com/2026/03/20/us/ice-arrests-immigration-enforcement.html (last accessed on June 4, 2026).

[3] Transactional Records Access (TRAC) – Immigration Detention Quick Facts, https://tracreports.org/immigration/quickfacts/ (last accessed on June 4, 2026).

to the precise enforcement activity that ICE is conducting at historic levels. Ultimately, without Defendants' adjudication of the Plaintiffs' applications for legal status in the United States, the Plaintiffs are subject to being arrested by ICE and placed in removal proceedings at any given moment, despite being *prima facie* eligible for legal permanent residency and complying with all requirements established under the INA.

Therefore, Plaintiffs' credible fear of arrest and removal by ICE is not theoretical, and the irreparable nature of this harm cannot be overstated. *See Noto v. Noem,* 5:26-cv-80-JSS-PRL, 2026 U.S. Dist. LEXIS 23773, at *18 (M.D. Fla. Feb. 5, 2026) (granting a motion for TRO after finding that the Plaintiff alleged a credible threat of arrest by ICE constituting an injury in fact and irreparable harm); *see also, Doe v. Trump*, 2026 U.S. Dist. LEXIS 95243, at *58. Removal from the United States is among the most severe consequences the legal system can impose on a noncitizen. It is the functional destruction of a life built in this country — employment, housing, family unity, and community ties severed, often permanently. Once removed, a Plaintiff's CAA petition would be deemed abandoned, and their ability to seek further relief would be severely curtailed or eliminated entirely. See 8 C.F.R. § 245.2(a)(4)(ii). Accordingly, absent injunctive relief, Plaintiffs face the imminent, concrete, and irreparable harm of detention and removal — a harm that is neither speculative nor remote, but rather, which defines the Plaintiffs' lives each day that the Defendants' unlawful policies remain unfettered and in effect.

  b. ***Plaintiffs Suffer Ongoing Irreparable Harm While They Are Prevented from Obtaining Lawful Permanent Status (and the Benefits of LPR Status) due to Defendants' Delay and their Arbitrary, Capricious, and Unlawful Policies***

Despite demonstrating their *prima facie* eligibility for legal permanent residency and work permits, the Plaintiffs' bona fide applications are effectively being held in abeyance for an

indefinite period of time. As a result, Plaintiffs cannot obtain a lawful immigration status in the United States, and as such, they are unable to enjoy the benefits of lawful permanent residence. Plaintiffs, many of whom have family members in Cuba and other countries, remain unable to travel and reunite with their family abroad. Plaintiffs cannot petition for qualifying family members under INA's family-preference categories, nor can they begin to accrue the continuous-residence period required for naturalization under 8 U.S.C. § 1427. And they remain subject to continuing uncertainty regarding their immigration status, including the risk of detention by Immigration and Customs Enforcement.    Furthermore, without timely adjudication of their EAD petitions, Plaintiffs face the loss of their ability to work lawfully in the United States altogether. Here, Plaintiffs' harm extends beyond ordinary economic injury, as the Plaintiffs would not only suffer lost wages but would lose the legal ability to work at all, which would "implicate Plaintiffs' fundamental ability to earn a livelihood, support their families, and remain self-sufficient." *Miot v. Trump,* 818 F.Supp. 3d 126, 183 (D.D.C. 2026)*.* Plaintiffs' employment and ability to support themselves and their families depend on continued work authorization. Loss of employment authorization under these circumstances constitutes irreparable harm, as the Plaintiffs would be categorically barred from lawful employment in the United States. *Miot, id. See also, Saghafi*, 2026 U.S. Dist. LEXIS 91662, at \*19; *Doe v. Trump*, 2026 U.S. Dist. LEXIS 95243, at \*57-59; Bowser, 2026 WL 555624, at \*28.

The ongoing harm suffered by the 129 Plaintiffs in this lawsuit is neither remote nor speculative.  Each day Defendants refuse to act results in additional lost wages, lost opportunities, deferred family reunification, and continuing uncertainty regarding Plaintiffs' immigration status and the ability to remain lawfully employed.  All these are injuries for which post-judgment relief cannot adequately compensate.

Plaintiffs respectfully submit that the irreparable harm being suffered is still ongoing. On June 12, 2026, the Defendants appealed a grant of vacatur relief in Dorcas International Institute of Rhode Island, et al., v. USCIS, et al., before the District Court for the District of Rhode Island, an action in which two of the policies challenged herein, PM-602-0192 and PM-602-0194, were also at issue. See Dorcas Int'l Inst. of R.I., et al., v. USCIS, et al., No. 1:26-cv-00132, (D.R.I. filed Mar. 5, 2026); see also, Dorcas Int'l Inst. of R.I. v. United States Citizenship & Immigr. Servs., No. 26-1703 (1st Cir. 2026). Furthermore, on June 19, 2026, the Government filed a stay with the District Court for the District of Rhode Island pending their appeal before the First Circuit Court of Appeals. See Defendants' Motion for Stay Pending Appeal, ECF No. 46, Dorcas Int'l Inst. of R.I., et al., v. USCIS, et al., supra. Accordingly, the Plaintiffs submit that the irreparable harm suffered and explained herein is not being mitigated by the vacatur relief granted in Dorcas v. USCIS, and that, absent any injunctive relief granted by this Court, the Defendants' arbitrary, capricious, and otherwise unlawful policies, coupled with the unreasonable delay in their adjudication process, will continue to irreparably harm the Plaintiffs and their pending applications for lawful status in the United States.

### III.  The Balance of Equities and the Public Interest Weigh Heavily in Plaintiffs' Favor

Plaintiffs seek narrow, temporary injunctive relief to address the immediate and irreparable harm caused by the Defendants' arbitrary, capricious, and otherwise unlawful policies. Plaintiffs only seek that Defendants adjudicate their applications within 30 days of this Court's order. They do not ask this Court to: (i) dictate the outcome of their applications, (ii) endow immigration benefits to which Defendants believe them ineligible; or (iii) ask the Court to interfere with Defendants' ordinary adjudication processes or discretionary review procedures. Plaintiffs merely respectfully request that Defendants comply with their non-

discretionary duty to adjudicate the applications presented before it, as Defendant USCIS is the sole U.S. agency empowered by Congress to administer lawful immigration to the United States. Defendants' refusal to adjudicate these applications would constitute agency action unlawfully withheld, and "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Noto v. Noem*, No. 5:26-cv-80-JSS-PRL, 2026 U.S. Dist. LEXIS 95497, at *27 (M.D. Fla. Feb 5, 2026).

Defendants are expected to justify their unreasonable delay and their recent arbitrary, capricious, and unlawful PMs, as attributable to the Trump Administration's national security priorities. However, Defendants have offered no evidence that any of the 129 Plaintiffs in this case poses a national security risk, and no individualized risk assessment was conducted before the Defendants implemented a blanket adjudication hold on all bona fide applications filed by applicants from certain "high-risk" countries. Further, ordering adjudication of the pending CAA and EAD petitions would not prevent Defendants from conducting any individualized background reviews. Defendants would remain "free to conduct through background checks, take security measures supported by individualized finding, deny applications, and reconsider already approved benefit requests where appropriate." *Doe v. Trump*, 2026 U.S. Dist. LEXIS 95243, at *61; *Saghafi*, 2026 U.S. Dist. LEXIS 91662, at *45.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant temporary injunctive relief by means of entering a Temporary Restraining Order (TRO), and upon notice and a future evidentiary hearing, Plaintiffs further request this Court grant a preliminary injunction, wherein: (i) Defendants are enjoined from imposing their arbitrary, capricious, and

unlawful policies, specifically, PM 602-0192, 602-0194, 602-0199, as to the 129 Plaintiffs in this action; and (ii) Defendants are compelled to adjudicate the Plaintiffs' pending applications within 30 days of the Court's order.

Respectfully submitted on July 1st , 2026,

/s/ Ismael Labrador_____
Ismael J. Labrador, Esq.

**Attorney for Plaintiffs**

FL Bar No.: 1030508
Gallardo Law Offices, P.A.
8492 SW 8th St
Miami, FL 33144
(305) 261-7000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITH MEMORANDUM OF LAW** and any attached pages was served upon the following parties on this 1st day of July 2026 via <u>E-SERVICE (CM/ECF)</u>:

**USCIS – c/o Office of the Chief Counsel**
5900 Capital Gateway Drive,
Mail Stop 2120,
Camp Springs, MD 20588-0009

**Joseph B. Edlow – c/o Office of the Chief Counsel**
5900 Capital Gateway Drive,
Mail Stop 2120,
Camp Springs, MD 20588-0009

**U.S. Department of Homeland Security – c/o Office of the General Counsel**
2707 Martin Luther King Jr. Ave, SE
Mail Stop 0485
Washington, DC 20528-0485

**Markwayne Mullin – c/o Office of the General Counsel**
2707 Martin Luther King Jr. Ave, SE
Mail Stop 0485
Washington, DC 20528-0485
            .


Respectfully submitted,


/s/ Ismael Labrador_____
Ismael J. Labrador, Esq.

*Attorney for Plaintiffs*

FL Bar No.: 1030508
Gallardo Law Offices, P.A.
8492 SW 8th St
Miami, FL 33144
(305) 261-7000