UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IDANIA M. ACOSTA REYNOSO
et al.,

      Plaintiffs,

v.                                                          Case No. 8:26-cv-1314-KKM-NHA

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES
et al.,

      Defendants.

_____

## <u>ORDER</u>

Plaintiffs are 129 Cuban nationals who allege that the United States Citizenship and Immigration Services' (USCIS)[1] "unreasonable delay in deciding their long-pending [Form I-485] applications for lawful permanent residence pursuant to the Cuban Adjustment Act of 1966" and their Form I-765 applications for employment authorization violates the Administrative Procedure Act and the Mandamus Act. *See* 2d Am. Compl. (Doc. 19) ¶¶ 1–4, 206–240. Nearly two months after filing this action, the plaintiffs move for emergency injunctive relief. *See* Mot. (Doc. 25); Mem. (Doc. 25-1). Specifically,

---

[1] The plaintiffs also name as defendants USCIS Director Joseph Edlow, the Department of Homeland Security (DHS), and DHS Secretary Markwayne Mullin. *See* 2d Am. Compl.

the plaintiffs request a temporary restraining order, to be followed by a preliminary injunction "upon notice and a future evidentiary hearing," that prohibits the defendants from applying various USCIS policy memoranda and compels the defendants to adjudicate the plaintiffs' pending Form I-485 and Form I-765 applications. *See* Mot. at 1–2. Because the plaintiffs fail to establish that ex parte relief is warranted, that they are substantially likely to succeed on the merits, or that they face irreparable injury, I deny the motion for a temporary restraining order.

## I.    BACKGROUND

The plaintiffs are 129 Cuban nationals who "were lawfully admitted or paroled into the United States" and have filed petitions for adjustment of status (Form I-485) under the Cuban Adjustment Act (CAA) and Form I-765 petitions for employment authorization (EAD) "pursuant to their pending CAA petitions." 2d Am. Compl. ¶ 2. Despite the plaintiffs' "complian[ce] with all USCIS requirements," in certain cases the "USCIS has failed to render adjudicative decisions on the Plaintiffs' CAA and EAD petitions" for over three years. *See, e.g.*, *id.* ¶¶ 4, 19–20; Mem. at 3. The plaintiffs claim that, unless USCIS adjudicates their petitions, they cannot obtain lawful permanent resident status and "face gaps in employment authorization." *Id.* ¶ 5.

The plaintiffs contend that the delayed adjudications result from Executive Order 14161, Presidential Proclamations 10949 and 10998, and

USCIS's issuance of an internal policy memorandum on December 2, 2025, PM-602-0192, entitled "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries," which allegedly "halted all adjudications of pending immigrant benefit applications" for individuals from thirty-nine countries, including Cuba. *Id.* ¶¶ 167, 203.

The plaintiffs identify two other USCIS policy memoranda related to the "Benefits Hold Policy" or "Adjudication Hold Policy": PM-602-0194 (Jan. 1, 2026) and PM-602-0199 (May 21, 2026). *See* Mot. at 1–2; Mem. at 2, 7–10. The first, PM-602-0194, "directs all USCIS personnel to (1) place a hold on pending benefit applications from noncitizens from countries listed in Proclamation 10998, regardless of entry date, pending a comprehensive review; and (2) conduct a comprehensive re-review of approved benefit requests implicated in Proclamation 10998 that were approved on or after January 20, 2021." *Doe v. Trump*, No. 1:25-CV-13946-JEK, 2026 WL 1170971, at *3 (D. Mass. Apr. 30, 2026). The second, PM-602-0199, informs officers that adjustment of status is "a matter of discretion and administrative grace not designed to supersede the regular consular processing of immigrant visas." *See* USCIS Policy Memorandum 602-0199 (May 21, 2026), at 1. "[T]he discretionary approval of such a request is extraordinary given Congress's intent that aliens should

depart once the purpose for which they sought parole or nonimmigrant admission from DHS has been accomplished." *Id.* at 4.

According to the plaintiffs, "these arbitrary, capricious, and unlawful policies subvert the underlying purpose of the Immigration and Nationality Act (INA) as established by Congress." Mem. at 7.

On June 5, 2026, the United States District Court for the District of Rhode Island vacated USCIS's "Benefits Hold Policy," which the court described as "USCIS's decision to place a hold on all adjudications of immigration benefit requests submitted by people from the Travel Ban Countries," which includes Cuba. *Dorcas Int'l Inst. of Rhode Island v. United States Citizenship & Immigr. Servs.*, No. 26-CV-132-JJM-PAS, 2026 WL 1622708, at *8 (D.R.I. June 5, 2026), *judgment entered*, No. 26-CV-132-JJM-PAS, 2026 WL 1695954 (D.R.I. June 11, 2026). The vacatur order references only PM-602-0192 and PM-602-0194, but not PM-602-0199. *See generally id.*; *see* Mem. at 14 (impliedly conceding that PM-602-0199 was not at issue in *Dorcas*).

The plaintiffs' second amended complaint seeks a declaration that the defendants' delay in adjudicating their pending applications and the "Benefits Hold Policy, as enshrined in PM-602-0192, and its successor and related memoranda," violate the APA, an injunction ordering the defendants "to cease

implementation" of the Benefits Hold Policy, an injunction or writ of mandamus directing the defendants to adjudicate their Form I-485 and Form I-765 petitions by a date certain, and attorney's fees and costs under the Equal Access to Justice Act. *See* 2d Am. Compl. at 99–100 (Prayer for Relief); *id.* ¶ 233. On July 1, 2026, the plaintiffs filed a motion for a temporary restraining order and preliminary injunction enjoining the defendants "from imposing . . . PM 602-0192, 602-0194, 602-0199, as to the 129 Plaintiffs in this action" and compelling the defendants "to adjudicate the Plaintiffs' pending applications within 30 days of this Court's order."[2] Mem. at 15–16; *see* Mot.

## II.    LEGAL STANDARD

To obtain a temporary restraining order, the plaintiffs must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam). Importantly, a

---

[2] Although the plaintiffs appear to raise a uniform challenge to specific USCIS policy memoranda, it is less clear that the plaintiffs' request for adjudication of separately-filed petitions "assert[s] any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(1)(A). As this litigation progresses, the parties should be prepared to address whether joinder remains permissible in the light of the fact-specific considerations relevant to the adjudication of Form I-485 and Form I-765 petitions filed by different individuals at different times.

court may issue a temporary restraining order without notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1)(A)–(B). "Courts generally consider 'whether the movant has shown adequate justification for such *ex parte* relief before addressing whether the movant has met the four-pronged test.'" *Liqid, Inc. v. Stevenson*, No. 8:23-CV-0314-KKM-TGW, 2023 WL 12170633, at *2 (M.D. Fla. Feb. 14, 2023) (quoting *Lara v. Moghraby*, No. 8:19-cv-2798, 2019 WL 6487321, at *1 (M.D. Fla. Dec. 3, 2019)). Ex parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

## III.   ANALYSIS

At the outset, the plaintiffs do not explain how the requested temporary restraining order would preserve the status quo rather than award effectively permanent relief through the forced adjudication of their pending Form I-485 and Form I-765 petitions. And part of the requested relief—an order

6

compelling the defendants to "adjudicate their applications within 30 days," Mem. at 14, would impose conditions beyond the fourteen-day limit permitted in a temporary restraining order, *see* FED. R. CIV. P. 65(b)(2). Further, the plaintiffs offer no reason why emergency, ex parte relief is appropriate here. Indeed, the relief was not even requested ex parte. Under Rule 65(b)(1)(B), a court may issue a temporary restraining order without notice only if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." But the defendants are on notice. The plaintiffs filed this action nearly two months ago, *see* (Doc. 1), the defendants have already filed a notice of appearance, *see* (Doc. 20); (Doc. 24) (ordering counsel to confer), and were electronically served with the plaintiffs' motion, *see* Mem. at 17. A temporary restraining order is not appropriate in this posture.

In addition to this procedural oddity of the plaintiffs' motion, the plaintiffs also fail to establish a likelihood of success on the merits or that they face an imminent risk of irreparable harm.

On the merits, I acknowledge that an out-of-circuit federal district court vacated two of the challenged policy memoranda, PM-602-0192 and PM-602-0194. *See Dorcas Int'l*, 2026 WL 1622708, at *10, and that the order and

7

judgment have been appealed but not stayed,[3] *see Dorcas Int'l Inst. of R.I. v. United States Citizenship & Immigr. Servs.*, No. 26-1703 (1st Cir. 2026). Although I have reservations about whether the challenged USCIS policy memoranda constitute final agency action or that I have jurisdiction to review USCIS's action insofar as it relates to the pace of adjudicating the plaintiffs' petitions, USCIS announced that the "hold" at the heart of the plaintiffs' complaint "should be treated as if [it] [is] not in effect." USCIS, *Court Order on Hold Policies* (June 12, 2026), https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies [https://perma.cc/K5K8-6TR9].

To be sure, the plaintiffs also challenge PM-602-0199, which was not at issue in *Dorcas* but which the plaintiffs claim, "aims to upend decades of congressionally mandated routes to adjustment of status, including the CAA, and . . . therefore only aggravates the direct, ongoing harm suffered by the 129 Plaintiffs in this lawsuit." Mem. at 3. I do not read the policy memorandum in the same way, but even so, I almost certainly lack jurisdiction to review the plaintiffs' challenge to any delays in adjudicating the plaintiffs' petitions because of it.

---

[3] The government filed an emergency motion for a stay pending appeal, and a hearing is set for July 8, 2026. *See Dorcas*, No. 26-CV-132-JJM-PAS (D.R.I. June 19, 2026), Doc. No. 46.

8

Title 8, United States Code, Section 1252(a)(2)(B)(ii) strips courts' "jurisdiction to review" any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." Under § 1255(a), "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if" the alien meets enumerated requirements. "In other words, § 1255(a) gives the Department of Homeland Security and USCIS broad discretion to determine and implement the adjudicative process for Form I-485 applications, within the bounds set by statute." *Kanapuram v. Dir., USCIS*, 131 F.4th 1302, 1307 (11th Cir. 2025).

Section 1255(a)'s grant of discretion extends even to "actions taken in the course of the decision-making process—including the pace at which that process is undertaken." *Id.* Thus, Section 1252(a)(2)(B)(ii) "precludes jurisdiction over challenges to USCIS delays in adjudicating Form I-485 adjustment of status applications." *Id.* at 1306; *see also Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1214 (M.D. Fla. 2007) (concluding that § 1252(a)(2)(B)(ii) barred judicial review of the pace at which USCIS processes a Form I-485 petition). Similarly, "courts have routinely held that approving or denying the

9

I-765 application . . . and deciding whether to extend the EAD period to encompass the pendency of any review, are decisions committed to USCIS's discretion and outside the purview of judicial review." *Kondapally v. U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 10, 26 (D.D.C. 2021) (collecting cases). And just as Section 1252(a)(2)(B)(ii) precludes jurisdiction over the plaintiffs' APA claims, it also "explicitly strips the district court of jurisdiction under the mandamus statute." *See Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 420 (11th Cir. 2009) (per curiam). Absent jurisdiction, I cannot reach the merits, let alone find in favor of the plaintiffs.

Turning to irreparable harm, I fail to see any such harm detailed in the plaintiffs' complaint or motion that warrants a temporary restraining order. Although the plaintiffs gesture broadly that USCIS's delay in adjudicating their petitions "actively exposes Plaintiffs to the real risk of detention and removal by ICE," Mem. at 11, they do not allege that any of the 129 plaintiffs have been contacted by immigration authorities or placed in removal proceedings. That the plaintiffs might be "vulnerable" to such enforcement, *see id.* at 11–12, without more, is not enough to justify emergency relief. As for the plaintiffs' claim that they "would not only suffer lost wages but would lose the legal ability to work at all," *id.* at 13, the plaintiffs do not adequately explain the immediacy of this risk. Again, the plaintiffs filed this action on May 4, 2026,

10

(Doc. 1), and the most recent challenged policy memorandum was issued over one month ago on May 22, 2026, *see* Mem. at 2–3. That the plaintiffs failed to seek emergency relief before now belies their claim that they face a risk of harm that is both imminent and irreparable. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm.").

Ultimately, the plaintiffs fail to carry their burden to demonstrate that a temporary restraining order is appropriate here. To the extent that the plaintiffs also request preliminary injunctive relief, I direct the defendants to respond to the motion.

## IV.   CONCLUSION

Because the plaintiffs fail to persuade that emergency ex parte relief is warranted, the motion is denied to the extent it seeks a temporary restraining order. Accordingly, it is **ORDERED:**

1.   Plaintiffs' Motion for a Temporary Restraining Order (Doc. 25) is **DENIED in part,** to the extent it seeks a temporary restraining order.

2.   **No later than July 17, 2026**, the defendants shall respond to the plaintiffs' motion to the extent it seeks a preliminary injunction.

11

**ORDERED** in Tampa, Florida, on July 3, 2026.

Kathryn Kimball Mizelle
United States District Judge