**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| IDANIA M. ACOSTA REYNOSO, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL.,<br>Defendants. | Case No. 8:26-CV-1314-KKM-NHA |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION SEEKING PRELIMINARY INJUNCTIVE RELIEF**

Defendants, by and through the undersigned counsel, hereby respond in opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, Doc. 25 ("PI Mot."), Doc. 25-1 ("PI Mem."). For the reasons discussed below, the Court should deny Plaintiffs' motion for preliminary injunctive relief.

## INTRODUCTION

On May 4, 2026, this matter commenced when Plaintiffs filed a complaint. Doc. 1. Three amended complaints have now been filed, each adding additional Plaintiffs. *See* Docs. 11, 19, 32. In the Third Amended Complaint ("TAC") Plaintiffs raise five causes of action under the Administrative Procedure Act ("APA") and Mandamus Act. Doc. 32. The TAC alleges that Defendant United States Citizenship and Immigration Services ("USCIS") has unreasonably delayed Plaintiffs' Forms I-485, Application to Register Permanent Residence or Adjust Status, and I-765, Application

for Employment Authorization. Plaintiffs allege that those delays are exacerbated by three nationwide policy memoranda issued by USCIS: (1) Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries (PM-602-0192),[1] (2) Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries (PM-602-0194),[2] and (3) Adjustment of Status is a Matter of Discretion and Administrative Grace, and an Extraordinary Relief that Permits Applicants to Dispense with the Ordinary Consular Visa Process (PM-602-0199)[3] (collectively "Challenged Policies").

Nearly two months after this case commenced Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction ("PI") seeking to enjoin Defendants from applying any of the Challenged Policies to their pending applications and to compel Defendants to adjudicate their pending applications within thirty days. *See* PI Mem., p. 1. Though this Court has already denied the motion insomuch as it seeks a TRO—Doc. 29—the request for a PI remains outstanding.

The motion should be denied for multiple reasons. First, two of the three Challenged Policies have been vacated and are currently being treated by USCIS as if no longer in effect. As to those Challenged Policies there is nothing for the Court to enjoin. Second, through this motion Plaintiffs improperly seek the final relief sought

---

[1] Available at https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf (last accessed July 17, 2026).

[2] Available at https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf (last accessed July 17, 2026).

[3] Available at https://www.uscis.gov/sites/default/files/document/memos/PM-602-0199-AdjustmentOfStatusAndDiscretion-20260521.pdf (last accessed July 17, 2026).

in the TAC, albeit on a more restrictive timeline. Third, severance and dismissal of multiple Plaintiffs for misjoinder and improper venue is appropriate. Finally, Plaintiffs fail to establish that they meet the threshold criteria for PI relief. Because Plaintiffs have not shown entitlement to the extraordinary relief sought, the Court should deny the motion.

## BACKGROUND

### I. Adjustment of Status Pursuant to the Cuban Adjustment Act ("CAA")

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537, governs how aliens obtain visas to enter, or are otherwise admitted to, the United States. It also governs the adjustment of status of nonimmigrants to permanent residence, a process which results in receiving lawful permanent residence.[4] The CAA was codified as a historic note to 8 U.S.C. § 1255, which allows the Attorney General, "in his discretion and under such regulations as he may prescribe," to adjust an alien's status to that of a lawful permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255. The CAA allows the Attorney

---

[4] *See* Adjustment of Status, USCIS, https://www.uscis.gov/green-card/green-card-processes-and-procedures/adjustment-of-status (last accessed July 17, 2026). At the motion to dismiss stage, the Court "may take judicial notice . . . of relevant public documents . . . [and] facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (citing Fed. R. Evid. 201); *see also Watts v. Joggers Run Prop. Owners Ass'n, Inc.*, 133 F.4th 1032, 1036 n.3 (11th Cir. 2025) (taking judicial notice of information on defendant's website at motion to dismiss phase).

General, in his *discretion*, to adjust the status of natives or citizens of Cuba. Pub. L. No. 89-732, 80 Stat. 1161, as amended 8 U.S.C. § 1255 note (Supp. 2010) (emphasis added); *see also Hayes v. Swacina,* No. 14-CV-22506-KMM, 2015 WL 12778781, at *3 (S.D. Fla. Mar. 31, 2015).

Thus an alien may seek adjustment of status under the CAA if he or she is a native or citizen of Cuba, was inspected and admitted or paroled into the United States, and meets the physical presence requirement. Pub. L. No. 89-732, § 1; *see also United States v. Estrada*, 969 F.3d 1245, 1261 (11th Cir. 2020). The CAA "gives complete discretion over the adjustment of immigration status to USCIS." *Hayes,* 2015 WL 12778781, at *3 (S.D. Fla. Mar. 31, 2015); *Martinez v. Noem*, No. 25-CV-23758-RAR, 2026 WL 472311, at *3 (S.D. Fla. Feb. 19, 2026). And the pace at which that decision is made is also discretionary, thus the Court lacks jurisdiction under the Mandamus Act and the APA to intervene. *Vega v. Noem*, No. 25-CV-26047-RAR, 2026 WL 1740033, at *3 (S.D. Fla. Mar. 25, 2026).

**II. Presidential Directives and Challenged Policies**

On November 27, 2025, USCIS issued Policy Alert PA-2025-26, revising the USCIS Policy Manual to incorporate the effects of Presidential Proclamation 10949 (PP 10949), which suspended or limited entry of nationals from 19 specified countries. PA-2025-26 thus formalized the integration of PP 10949's country-specific national security considerations into USCIS discretionary adjudications and complemented USCIS Policy Memorandum PM-602-0192, which directed adjudicative holds and re-reviews of certain benefit applications for nationals of the same countries. PM-602-

0194, issued on January 1, 2026, expanded the scope of PM-602-0192 by introducing additional country-based restrictions and clarified that the adjudication "hold" means "a case [can] proceed through processing, up to final adjudication," with "only the decision deferred"—"if a hold is in place, the case can continue to move forward until ready for a decision." PM-602-0194 at 2 n.2. PM-602-0199, issued on May 21, 2026, operates as a reminder to USCIS personnel and the public that adjustment of status is discretionary and not intended to supersede the processes ordinarily used in adjudicating immigrant visas. PM-602-0199 at 1. Those ordinary processes include a preference for consular processing of immigrant visas. *Id.* at 3.

As this Court has already noted, in response to the June 5, 2026 decision and judgment subsequently issued in the Rhode Island case *Dorcas International Institute of Rhode Island, et al. v. United States Citizenship and Immigration Services, et al*, No. 26-cv-132-JJM-PAS ("*Dorcas*"), USCIS has now publicly posted notice on its website that the Challenged Policies "should be treated as if they are not in effect." *See* Doc. 29, p. 8; *see also* Court Order on Hold Policies (June 12, 2026) (available at https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies) (last accessed July 17, 2026). Accordingly, USCIS is processing Plaintiffs' applications with some decisions having already issued and those still pending awaiting adjudication in accordance with normal processing procedures.

And while PM-602-0199 remains in effect it does not apply to the CAA, which is not "an exception to the regular consular process"—PM-602.0199, p. 6—because it is a special program available only to Cuban nationals, their spouses and children, *inter*

*alia*, physically present in the U.S., and not at a consulate. Pub. L. No. 89-732, § 1.

## LEGAL STANDARD

Preliminary injunctive relief—whether through a TRO or a PI—is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The standard for obtaining either form relief—in the traditional sense—is the same. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (per curiam); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (per curiam). A movant must show: (1) substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citations omitted); *see also Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). Importantly, the party seeking injunctive relief bears the burden of persuasion as to each of the required elements. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Bongiovanni v. Austin*, No. 3:22-cv-237-MMH-MCR, 2022 WL 1642158, at *5 (M.D. Fla. May 24, 2022).

## ARGUMENT

### I. Two of the Hold Policies Challenged Have Been Vacated and the Third is Inapplicable.

Plaintiffs' Motion should be denied because two of the Challenged Policies on which Plaintiffs bring suit have been vacated and are currently being treated by USCIS "as if they are no longer in effect."[5] Accordingly, there is nothing for the Court to enjoin. Now that those Challenged Policies have been vacated and are no longer in effect, USCIS has resumed processing Plaintiffs' applications as it normally would. And as to PM-602-0199, as explained therein, the guidance merely reiterates the existing state of law and precedent and directs USCIS personnel to act consistent with that law, encouraging the use of consular processing where appropriate. As CAA applicants are not subject to identical criteria as those seeking to adjust their status through traditional means—i.e. via consular processing—PM-602-0199, which reminds adjudicators that the ordinary process dictates use of consular processing, is irrelevant.

### II. Plaintiffs Improperly Seek the Ultimate Relief Sought in the Complaint.

Plaintiffs' Motion asks the Court to grant them a mandatory permanent injunction compelling Defendants to adjudicate their I-485 and I-765 applications within thirty days—a form of relief even more demanding than the final relief they seek in the TAC given the timeline requested—but before Defendants have even

[5]Court Order on Hold Policies (June 12, 2026) (available at https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies) (last accessed July 17, 2026).

answered the TAC. *See* Doc. 32 at 107-08 (Prayer for Relief). But a PI is not the appropriate vehicle through which to seek relief on the merits. *Heckler v. Redbud Hosp. Dist.*, 473 U.S. 1308, 1314 (1985). Rather, such relief is meant to "preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990). Plaintiffs' Motion seeks much more than maintenance of the status quo—it seeks relief on the merits. Because the Motion is an impermissible attempt to merely expedite the affirmative relief sought in the TAC as opposed to preserving the status quo it should be denied. *See Bell v. Dixon*, No. 3:26-CV-639-JEP-PDB, 2026 WL 868338, at *4 (M.D. Fla. Mar. 30, 2026).

Furthermore, granting Plaintiffs the ultimate relief they seek in this Motion would improperly conflate two separate and distinct issues: (1) whether the Court should enjoin any adjudicative hold imposed on Plaintiffs' pending applications under the Challenged Policies; and (2) whether USCIS has unreasonably delayed adjudicating each specific Plaintiff's applications such that the Court should compel such adjudication.

The first issue, which includes whether the Court has jurisdiction, is a legal determination that can be resolved on the preliminary injunction papers currently before the Court (although the government reserves the right to present additional arguments in a responsive pleading and—if necessary—a motion for summary judgment). And arguably, since two of the Challenged Policies are no longer in effect, and the third is inapplicable, Plaintiffs have not shown that the law or facts clearly

favor their position. The second issue, however, is an evidence-based determination that courts routinely consider under the *TRAC* factors at either the motion to dismiss or motion for summary judgment stage. *See e.g.*, *Otto v. Mayorkas*, No. 8:22-CV-1172-WFJ-SPF, 2023 WL 2078270, at *4 (M.D. Fla. Feb. 17, 2023); *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278 (S.D. Fla. 2023); *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1316 (S.D. Fla. 2023); *Abou Hala v. Chief, Immigrant Inv. Program Off.*, No. 6:23-CV-1541-PGB-DCI, 2024 WL 4188350, at *6 (M.D. Fla. Sept. 13, 2024) (reserving analysis for the summary judgment stage). Were the Court to grant relief sought in the instant Motion, it would foreclose resolution of these claims under the appropriate framework. In short, PI relief in the form sought is wholly inappropriate.

**III. Out-of-District Plaintiffs Should be Severed and Dismissed for Misjoinder and Improper Venue.**

Injunctive relief is also inappropriate because the Plaintiffs have been improperly joined and should be severed. Furthermore, some Plaintiffs have not established that venue in this Court is appropriate. With these issues still outstanding, injunctive relief—particularly in the form sought—is inappropriate.

Under Rule 20(a) joinder is appropriate where plaintiffs assert a right to relief jointly arising out of the same transaction, occurrence, or series of transactions or occurrences and questions of law or fact common to all the plaintiffs will arise in the action. *Ruiz v. Ringling College of Art and Design*, Inc., 656 F. Supp. 3d 1340 (M.D. Fla. 2023); Fed. R. Civ. P. 20(a). The Eleventh Circuit applies the "logical relationship" test, in which "a logical relationship exists if the claims rest on the same set of facts or

the facts on which one claim rests activate additional legal rights supporting the other claim." *Ruiz*, 656 F. Supp. 3d at 1354 (internal citations omitted). Plaintiffs' unreasonable delay claims do not satisfy Rule 20(a). First, Plaintiffs' delay claims do not "aris[e] out of the same transaction and occurrence." *Ruiz*, 656 F. Supp. 3d at 1359. The processing and adjudication of I-485 and I-765 applications are highly particularized and fact-intensive processes for each applicant.[6] For example, each applicant's underlying immigration status, factual background, what security screening may be needed, and when the applicant applied all contribute to the adjudication pace of an application. *Id.*; *see also* Doc. 32, ¶ 178 (claiming that applications have been pending for a wide range of periods spanning 9 to "over 30" months).[7] And furthermore, adjudicating adjustment of status applications requires an individualized finding that the alien merits a favorable exercise of discretion.[8] Put simply, there are a myriad of facts that may distinguish the timeline for adjudication of these applications and Plaintiffs have not satisfied the "logical relation" test.

Plaintiffs do not share a common question of law for much the same reason. Courts have routinely observed that resolving claims of unreasonable delay is "a

---

[6] *See* Green Card for a Cuban Native or Citizen, available at https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-a-cuban-native-or-citizen (last accessed July 17, 2026); *see also* USCIS Policy Manual, Employment Authorization, Adjudication, available at https://www.uscis.gov/policy-manual/volume-10-part-a-chapter-4 (last accessed July 17, 2026).

[7] Plaintiff M.A.O. asserts that his I-765 application has been pending only 5 months. Doc. 32, ¶ 16. Plaintiff Dominguez Gonzalez alleges that his application has been pending for 34 months. *Id.* at ¶ 50. Accordingly this range is more accurately represented as 5 to 34 months.

[8] *See* USCIS Policy Manual, Chapter 10 – Legal Analysis and Use of Discretion, available at https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-10 (last accessed July 17, 2026); *see also* Pub. L. No. 89-732, § 1.

complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Lammers v. Chief, Immigrant Inv. Program, US Citizenship & Immigr. Servs.*, No. 6:21-CV-668-GAP-GJK, 2021 WL 9408916, at *2 (M.D. Fla. July 28, 2021) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). An analysis of delay into I-485 and I-765 applications for 143 distinct individuals together would be burdensome and disjointed as Plaintiffs' applications do not arise out of the same transaction or occurrence. Plaintiffs' delay claims do not therefore present common questions of fact or law and Plaintiffs' cases should be severed.

No substantial rights will be prejudiced by severance. Severance will allow each Plaintiff to proceed with his or her individual claims against USCIS. Indeed, severance will enhance the rights of each Plaintiff because each individual's claims, and the facts underlying them, will be the focus of the litigation. With 143 separate named Plaintiffs, each presenting different and individualized facts, key points as to each application may otherwise be lost in the overall litigation. Moreover, if litigated in the districts in which Plaintiffs reside, ease of access to the court will enable the Plaintiffs to attend hearings. Joinder is not appropriate in a case such as this, in which each Plaintiff's case involves a particularized set of facts, demanding varying levels of analysis and discretion. The only alleged common denominator are the Challenged Policies, but there are few, if any, facts alleged by the Plaintiffs that would suggest their pending applications are still affected by the now-lifted adjudicative pause under two of those Challenged Policies.

Furthermore, the Court should also dismiss the severed Plaintiffs who do not reside in this district because this district is an improper venue to bring their claims. In cases involving government officials, venue is proper in the district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Here, Plaintiffs' pleadings do not establish proper venue because they do not demonstrate that the Plaintiffs reside in this district nor that a substantial part of the event or omissions giving rise to the claims occurred in this district. *See* Doc. 32, ¶¶ 11-153 (reflecting only that Plaintiffs purportedly filed their applications while in this district, not where Plaintiffs reside).[9] Accordingly, the proper venue for those Plaintiffs' claims is either in the district where the USCIS field office processing their application is located or where the Plaintiffs actually reside. As such, the Court should independently dismiss all misjoined Plaintiffs who do not reside in this district for lack of venue.

## IV. Plaintiffs Fail to Establish Entitlement to a Preliminary Injunction.

### A. Plaintiffs Are Unlikely to Succeed on the Merits.

#### *1. The Relief sought is jurisdictionally barred.*

This Court lacks jurisdiction to order Defendants to adjudicate Plaintiffs' Form I-485 and Form I-765 applications because the decision of when to adjudicate those

[9] In fact, Plaintiffs suggest in the instant Motion that most—if not all—Plaintiffs reside in an area covered by the U.S. District Court for the Southern District of Florida. *See* PI Mem., p. 10.

applications falls within the discretion of certain executive agencies. *See Martinez*, 2026 WL 472311, at *2-4 (finding no jurisdiction under either APA or mandamus over claims related to Form I-485 application); *Hernandez Sierra v. Mullins et al.,* No. 26-CV-61022 (S.D. Fla. July 7, 2026) (finding no jurisdiction over APA claims as related to Form I-486 and Form I-765 applications).

Here, Plaintiffs challenge the pace at which USCIS is adjudicating their adjustment of status and employment authorization applications, decisions reserved to the discretion of USCIS and therefore not subject to judicial review. Indeed, "'[f]or this Court to have jurisdiction, it must find that Defendants have a non-discretionary duty as to the pace of adjudicating Plaintiff's Petition.'" *Vega*, 2026 WL 1740033, at *5 (quoting *Hasan v. Wolf*, 550 F. Supp. 3d 1342, 1346 (N.D. Ga. 2021)). APA review, however, is not available when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). Likewise, relief under the Mandamus Act is not available unless (1) Plaintiff has a clear right to relief, (2) USCIS has a clear duty to act; and (3) no other adequate remedy is available. *See* 28 U.S.C. § 1361; *see also Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011) (citing *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003)).

The plain text of the CAA expressly commits the final grant of adjustment to the discretion of USCIS. *See* Cuban Adjustment Act, Pub. L. No. 89-732, 801 Stat. 1161, and Courts in this District have noted the CAA "'gives complete discretion over the adjustment of immigration status to USCIS.'" *Vega*, 2026 WL 1740033, at *5 (quoting *Hayes*, 2015 WL 12778781, at *3); *Martinez*, 2026 WL 472311, at *3.

Similarly, the Eleventh Circuit has found that the APA does not provide the district court with jurisdiction to review USCIS's discretionary denial of an application for adjustment of status under the CAA. *See Garriga v. Hackbarth*, 548 Fed. Appx. 559 (11th Cir. 2013). Moreover, there is nothing in the CAA that prescribes a timeframe for the adjudication of an adjustment application. *Vega*, 2026 WL 1740033, at *6. *See Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1205 (M.D. Fla. 2007) (with respect to an I-485 application, USCIS "has a nondiscretionary duty to act on an application . . . and a non-discretionary duty to adjudicate an application" but a "discretionary duty as to the pace of processing the application[.]" (emphasis in original)). Thus, "even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830; see also *Osechas Lopez*, 649 F. Supp. 3d at 1286 ("Plaintiff has not demonstrated a clear right to the relief requested . . . largely because there is no congressionally or administratively prescribed timeframe within which USCIS has a duty to process or adjudicate I-526 petitions."). When there is no statutory or regulatory provision governing the pace of adjudication for a USCIS application, there is no identifiable standard against which the court can determine whether the agency "unlawfully withheld or unreasonably delayed" an adjudication and thus lacks jurisdiction to review a claim under the APA. *See generally Alfassi v. Garland*, 614 F.Supp.3d 1252, (S.D. Fla 2022); *Yilmaz v. Mukasey*, No. 08-21242, 2008 WL 11417739 (S.D. Fla. 2008); *Abdouch v. Mayorkas*, No. 3:24-cv-310, 2024 WL 5158772 (M.D. Fla. 2024).

Likewise, the decision to delay the adjudication of a Form I-765 application is also discretionary. *Hernandez Sierra,* No. 26-CV-61022 (S.D. Fla July 7, 2026). As explained by the court, this is so because "Congress has set out the Secretary's and the Attorney General's discretionary authority over the process of adjudication—*and hence the pace of adjudication*—in statutes, shielding it from judicial review." *Id.* (quoting *Beshir v. Holder*, 10 F. Supp. 3d 165, 176 (D.D.C. 2014)). Indeed, the underlying immigration regulations guiding the process of issuing EADs do not set clear standards. *See generally* 8 C.F.R. § 274a.12. As relevant here, "[a]n alien who has filed an [I-485] application for adjustment of status to lawful permanent resident," 8 C.F.R. § 274a.12(c)(9), is a member of a class of aliens who "must apply for work authorization," *see* 8 C.F.R. § 274a.12(c), as opposed to being automatically entitled to it. *See Kondapally v. U.S. Citizenship & Immigr. Servs.,* 557 F. Supp. 3d 10, 15, 19 (D.D.C. 2021) (explaining that § 274a.12(c)(9) permits filing of a Form I-765 "[d]uring the pendency of the I-485 application," and that a pending I-485 application is "a prerequisite for work authorization"). The immigration regulations further provide that "[t]he approval [or denial] of [I-765] applications filed under 8 C.F.R. § 274a.12(c) . . . are *within the discretion of USCIS*[,]" without any textual limitation on that discretion. *See* 8 C.F.R. § 274a.13(a)(1) (emphasis added); *see also Kondapally,* 557 F. Supp. 3d at 15 (recognizing that the process to adjudicate an I-765 application "is mentioned nowhere in the INA"). Indeed, the regulatory provisions "expressly reserve[] such determinations for USCIS." *Id.* at 26.

Consequently, "courts have routinely held" that I-765-related actions "are decisions committed to USCIS's discretion and outside the purview of judicial review." *Kondapally,* 557 F. Supp. 3d at 26. *See also Avila v. Sec'y, Dep't of Homeland Sec.*, No. 5:25-CV-406-JSM-PRL, 2025 WL 3852842, at *5 (M.D. Fla. Dec. 19, 2025), r*eport and recommendation adopted*, No. 5:25-CV-406-JSM-PRL, 2026 WL 27336 (M.D. Fla. Jan. 5, 2026) (discussing discretionary nature of adjudication of I-765 applications filed incidental to I-485 applications); *see also Amrani v. Sec'y of DHS*, No. 25-cv-308, 2025 WL 3653594, at *3 (M.D. Fla. Dec. 17, 2025) (finding adjudication of employment authorization is discretionary and precluding judicial review under the APA and Mandamus Act); *Smith v. Garland*, No. 22-cv-1535, 2023 WL 3742978, at *6 (E.D. Wis. May 31, 2023); *Rodriguez v. Nielsen*, No. 16 Civ. 7092, 2018 WL 4783977, at *7 (E.D.N.Y. Sept. 30, 2018); *Khachutorov v. Britten*, 792 F. Supp. 3d 1106, 1114 (C.D. Cal. 2025); *Bestman v. DHS*, No. 20-cv-564, 2025 WL 358764, at *4 (D.D.C. Jan. 31, 2025). The same should hold true here.

In addition, Plaintiffs fail to identify a "final agency action" warranting APA relief. The APA authorizes judicial review of "final agency action" for which there is no other adequate remedy in a court. 5 U.S.C. § 704. There is no jurisdiction under the APA where the action challenged is not final. Two conditions must be satisfied for agency action to be final: (1) "the action must mark the 'consummation' of the agency's decision-making process, e.g., that 'it must not be of a merely tentative or interlocutory nature'" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*,

520 U.S. 154, 177-78 (1997) (citation omitted). Consequently, finality requires that the decisionmaking process be complete. *See Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1255 (11th Cir. 2020). A challenged action fails the first prong of finality if it is "tentative or interlocutory" and does not express an agency's "unequivocal position." *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943-44 (D.C. Cir. 2012) (holding that FDA's warning letters were not final where they contemplated possible, but not inevitable, enforcement action).

The Challenged Policies at PM-602-0192 and PM-602-0194 plainly arise from, and operate within, an expressly ongoing decision-making framework established by the Presidential Proclamation, which directed that the Secretary of State—in consultation with the Secretary of Homeland Security and other senior national security officials—must reassess the relevant conditions and recommend whether any suspensions or limitations imposed in connection with the Proclamation should be "continued, terminated, modified, or supplemented. *See* PP 10949, Section V. USCIS's issuance of PM-602-0194, which modified initial guidance found at PM-602-0192, confirms that the comprehensive re-review policies are neither fixed nor final. Instead, the Challenged Policies are reflective of whether particular applications are subject to additional review given the national security and public safety concerns that subsequently came to light.

The Challenged Policies are also not properly considered final agency actions because no rights or obligations flow from them. At most, they reflect a pause in an ongoing administrative process, one that remains open to further agency

consideration. *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 496 (6th Cir. 2014) ("Congress has delegated to specific government agencies the task of enforcing immigration laws and determining aliens' immigration statuses. The agencies' decisionmaking process consummates when they issue a final decision regarding an alien's immigration status. Termination of refugee status and denial of a status adjustment application are intermediate steps in the removal of an alien, and not the consummation of the agencies' decisionmaking on the alien's immigration status."). Thus, these determinations are not final agency action. *See Trump v. New York*, 592 U.S. 125, 131 (2020) ("Any prediction how the Executive Branch might eventually implement this general statement of policy is 'no more than conjecture' at this time.") (cleaned up). Plaintiffs fail to plead a final agency action as it related to the pendency of their I-485 and I-765 applications. *See Abou Hala*, 2024 WL 4188350, at *4 (rejecting final agency action claim to the extent it attempted to frame failure to adjudicate as a refusal to act and finding that the decision-making process had not reached its consummation under *Bennett*).

Finally, relief under the Mandamus Act is an extraordinary remedy, appropriate only where there is a clear right to the relief requested, a clear duty to act, and no other adequate remedy available. *Cash*, 327 F.3d at 1258.

USCIS's decisions on when and how to adjudicate Plaintiffs' pending I-485 and I-765 applications remain within the exclusive purview of the agency. The INA and the APA preclude the Court from trampling on those discretionary decision-making functions nor does the Mandamus Act provide authority for judicial intervention.

Because the Court lacks jurisdiction to grant the relief sought, Plaintiffs are unlikely to succeed on the merits and their claims should be dismissed pursuant to Federal Rule 12(b)(1).

*2. Petitioner's claims are now moot.*

Some Plaintiffs' challenges to the pace at which USCIS has adjudicated their I-765s no longer present a live case or controversy because those applications have now been adjudicated. Furthermore, as discussed *supra* with the lift of the holds provided for in the Challenged Policies, adjudication has resumed. These claims are now moot and the Court lacks jurisdiction to grant relief. Additionally, many Plaintiffs have now been issued interview notices regarding their Form I-485s, a step in the adjudicatory direction undermining Plaintiffs' inaction claims. *Meixian Ye v. Kelly*, No. 17-cv-3010, 2017 WL 2804932, at *2 (E.D.N.Y. Jun. 28, 2017) (dismissing action after USCIS had issued a Request for Evidence, which undermined the inaction-predicate for an unreasonable delay claim under the APA).

Federal courts may only hear "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. A court lacks jurisdiction where an action no longer presents a live controversy through which meaningful relief can be granted. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000). The doctrine of mootness demands that the Court "look at the events at the present time, not at the time the complaint was filed . . . ." *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001). And where events take place subsequent to the filing of the claim that would preclude a court from granting meaningful relief, the

issue becomes moot and the case must be dismissed. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

Here, USCIS has issued decisions in some of the challenged I-765 applications. *See e.g.*, USCIS Case Status Online Record for Plaintiff Rigoberto Reguiera Vega, EAD Receipt No. IOE0929397183, available at https://egov.uscis.gov/ (last accessed July 15, 2026), attached as "Exhibit A". Additionally, though several Plaintiffs have pending EAD applications as reflected in the TAC, they have omitted the fact that they submitted additional EAD applications and that those applications have been adjudicated favorably, meaning that they now have employment authorization. *See* USCIS Case Status Online Records for Plaintiffs Dominguez Gonzalez, Gonzalez Porto, Perez Nodar, Viamontes Herrera, Vitier Padron, Sedano Herrera, Bidopia Herrera, and Garcia Armas, attached as "Exhibit B." Now that these Plaintiffs' applications have been adjudicated there is no relief for the Court to grant.

In addition, adjudicative action has resumed with several Plaintiffs having recently been scheduled for interviews on their I-485s. *See* Notices of I-485 Interviews, attached as "Exhibit C." There is no active case or controversy pending and the Court lacks jurisdiction over these claims. Similarly, for the reasons discussed *supra*, Argument—Section I, given that two of the Challenged Policies are not being treated as if in effect in light of the decision in *Dorcas* and given that the third Challenged Policy is not relevant in CAA adjudications, there is no relief to grant as it relates to those claims either.

*3. Plaintiffs Fail to State a Claim of Unreasonable Delay*

The Supreme Court has held that the passage of time alone cannot support a claim of unreasonable agency delay. *INS v. Miranda*, 459 U.S. 14, 19 (1982). Rather, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). To guide their analysis in determining reasonableness, Courts often look to the so-called *TRAC* factors. *See Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). The six *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; 3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.
>
> *TRAC*, 750 F.2d at 80.[10]

***The Agency Follows a Rule of Reason.*** USCIS generally adjudicates I-485s and I-765s on a first in and first out basis. *See e.g.*, https://egov.uscis.gov/processing-times

[10] In the Eleventh Circuit, those courts that have proceeded with consideration of the *TRAC* factors have largely done so where the *TRAC* factors were independently raised at the pleadings stage, as is the case here. *See, e.g.*, *Osechas Lopez*, 649 F. Supp. 3d at 1287; *Otto v. Mayorkas*, No. 8:22-cv-1172-WFJ-SPF, 2023 WL 2078270 at *4 (M.D. Fla. February 17, 2023).

(from the drop-down menu select "I-765, Application for Employment Authorization" "Based on a Pending I-485" and "Service Center Operations (SCOPS)" (as of July 17, 2026) ("We generally process cases in the order we receive them."). Here, Plaintiffs allege that their I-485s and I-765s have been pending for periods spanning 5 to 34 months—Doc. 32, ¶¶ 16, 50, 178—and courts have found similar periods insufficient to support an unreasonableness finding. *See Otto*, 2023 WL 2078270, at *5 (finding delay of less than three years from the filing of the petition to the filing of the Complaint not unreasonable as a matter of law); *see also Osechas Lopez v. Mayorkas*, No. 22-civ-21733, 2023 WL 152640, at *5 (S.D. Fla. Jan. 10, 2023) *5 (27.5 month delay); *Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *6 (D.D.C. July 19, 2022) (32 months); *Telles v. Mayorkas*, No. 21-cv-395 (TJK), 2022 WL 2713349, at *4 (D.D.C. July 13, 2022) (42 months).

***There is No Mandatory Timetable.*** Congress has not specified a timeframe in which USCIS must adjudicate I-485 applications. Rather, Congress granted the Secretary the ability to create regulations "as he may prescribe" regarding the adjustment of such applications. 8 U.S.C. §1255(a). Nor has Congress established a timetable for adjudication of either form type, weighing this factor in favor of Defendants. *See Tikhonov v. Mayorkas*, No. 23-24572-CIV, 2024 WL 4692146, at *6 (S.D. Fla. Nov. 6, 2024) (finding factor irrelevant where no Congressionally established timetable has been offered); *see also Jiwani v. Dir. of United States Citizenship & Immigr. Servs.*, No. 1:25-CV-2847-MHC, 2026 WL 788945, at *10 (N.D. Ga. Mar. 18, 2026) (same).

***Health and Human Welfare are Not at Stake and Interests Are Not Prejudiced.*** Plaintiffs assert in the TAC that their interests have been prejudiced by lack of "work authorization, LPR status, family stability"—doc. 32, ¶ 184—but as discussed *supra* some I-765 applications have now been approved. As to the remaining interests, as the Court found in *Davies*, "the inability to move forward with the normal course of life are inherent risks of engaging in the immigration process," which "weigh[s] against finding that the third and even fifth *TRAC* factors favor a plaintiff" (internal citation omitted). 2023 WL 12167543, at *13; *see also Otto*, 2023 WL 2078270 at *12.

***An Injunction Would Impede Agency Priorities.*** Plaintiffs effectively ask this Court to compel USCIS to realign its resources and priorities to take steps to adjudicate their applications before others, trampling on USCIS's independent discretionary workflow decisions and allowing Plaintiffs to jump the line above those patiently awaiting their turn. Courts have repeatedly rejected these actions absence sufficient justification to do so. *See, e.g. Otto*, 2023 WL 2078270 at *5 (finding *TRAC* factor four to favor the government where skipping the line produced no net gain).

***No Bad Faith.*** As Plaintiffs have not alleged bad faith *TRAC* factor six either favors Defendants or remains neutral. *Otto*, 2023 WL 2078270, at *5.

Because Plaintiffs fail to allege sufficient facts to state a claim for relief, this Complaint should be dismissed under Federal Rule 12(b)(6) and Plaintiffs are unlikely to succeed on the merits.

B. Plaintiffs have not demonstrated irreparable harm sufficient to justify relief.

Emergency injunctive relief, such as a preliminary injunction, is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis in original). The mere possibility of such harm is insufficient as is speculative injury. *Id.*

Here, the harms alleged do not meet this threshold. Plaintiffs first allege—using broad and sweeping language—that they risk detention and removal from the United States. PI Mem., p. 10. No affidavit or specific facts are offered to support this whatsoever. Instead, Plaintiffs suggest that "most, if not all, Plaintiffs in this action also physically reside in South Florida" going on to provide statistics purportedly pertaining to ICE operations in the Miami area. But the geographical area pertaining to this District—and purportedly covering these Plaintiffs if they indeed reside here, which remains unclear—is covered by ICE's Orlando Field Office, not Miami. *See* ICE Orlando Field Office, available at https://www.ice.gov/node/62081 (last accessed July 17, 2026). For that reason alone, this data is of little significance here, particularly when coupled with the complete absence of facts tethered specifically to any named Plaintiff. Furthermore any risk of detention or removal is attributable to Plaintiffs' presence in the United States without lawful status to remain, not Defendants' processing times. After all, adjudication of their applications is not certain to be in their favor as adjustment of status requires individual discretionary decision-making and employment authorization confers no protection from relief from removal.

Plaintiffs' reliance on *Noto* for the premise that they have presented a credible fear of arrest and removal is no more convincing because this matter can easily be distinguished. *See* PI Mem., p. 12. In *Noto* the Court found persuasive evidence submitted to support the alien's individualized fear of arrest at her upcoming adjustment of status interview that included reports from news organizations concerning arrests that occurred at adjustment of status interviews and a declaration submitted by an experienced immigration lawyer that attested to a serious and credible threat of arrest based on his experience. *Noto v. Noem*, 820 F. Supp. 3d 1344, 1351 (M.D. Fla. 2026). All of this taken together led to the court's finding. *Id.* This case lacks similar support. There are no declarations, no affidavits, and no news reports relevant to this geographical area. Put simply, Plaintiffs fail to sufficiently establish how the alleged risk of harm is imminent or irreparable.

Plaintiffs next assert that preliminary injunctive relief is necessary because they continue to experience loss of employment. First, for some Plaintiffs, this is no longer the case as adjudications have resumed and decisions granting I-765s have recently issued. *See supra*. Second, Plaintiffs again fail to offer any concrete facts to support the sweeping allegation that "all 129" Plaintiffs[11] have suffered from "lost wages, lost opportunities, deferred family reunification, and continuing uncertainty" regarding their immigration statuses and loss of income. Plaintiffs cannot benefit from the extraordinary relief afforded by way of a PI on unsupported speculation. They fail to

[11] The instant Motion was filed before the last 14 Plaintiffs were added.

meet their burden in establishing that they are likely to suffer harm warranting such relief.

C. The balance of equities and public interest favor Defendants.

Finally, granting a preliminary injunction would be contrary to the public interest. The balance of equities and the public interest elements of the injunctive relief test merge when the government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero- Barcelo*, 456 U.S. 305, 312-13 (1982).

Crucially, two of the Challenged Policies are currently not in place and the third is not so much a policy as a restatement of law and inapplicable in CAA adjustment of status adjudication. Therefore, the only remaining question before this Court is whether Plaintiffs—who have been waiting for various times for various immigration benefits—all deserve to receive an adjudication of their case within the demanded timeframe. The Supreme Court has warned that "it would be an unwarranted judicial intrusion into [a] pervasively regulated area for federal courts" to impose extra-statutory time requirements for adjudication of administrative claims. *Heckler v. Day*, 467 U.S. 104, 119 (1984). And courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. at 312-13. A preliminary injunction would be contrary to public interest here because it would merely place Plaintiffs ahead of other applicants, "any number of which may be more compelling than plaintiffs." *See Zafarmand v.*

*Pompeo*, No. 20-cv-00803-MMC, 2020 WL 4702322, at *7 (N.D. Cal. Aug. 13, 2020). It would be particularly egregious for Plaintiffs who have been waiting for a mere five months to bypass all other applicants and compel USCIS to adjudicate their cases on an expedited basis. *See* Doc. 32, ¶ 16.

This Court would not be alone in declining to grant the relief sought as other federal district courts have denied motions for PIs in similar cases. In *Abdelrahim v. Edlow*, the district court in Massachusetts denied without prejudice a group of noncitizens' requests for preliminary injunctive relief from the Policy Memoranda, finding that *Dorcas* "has effectively given plaintiffs the relief which they seek in their motion" and therefore the motion is moot. Dkt. 12, *Abdelrahim v. Edlow*, No. 1:26-cv-11995-RGS (D. Mass. June 11, 2026). More recently, a district court denied the plaintiffs' motion for temporary restraining order as moot in light of the judgment in *Dorcas*, "reflecting that the challenged policies are not being applied" to the plaintiffs' pending applications. *Doe v. Mullin*, 1:26-cv-11884-DJC (D. Mass. June 24, 2026), Dkt. 34. Significantly, only two weeks ago Judge Dudek in the Fort Myers division declined to grant a PI to a CAA applicant with pending I-485 and I-765 applications reasoning that "[w]hen a court lacks subject matter jurisdiction over a claim, the plaintiff's likelihood of success is absolute zero." *Guerra Estrada v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 2:26-CV-00990-KCD-KRH, 2026 WL 1871901, at *1 (M.D. Fla. June 30, 2026). Entry of a preliminary injunction would be contrary to the public interest when doing so would merely place Plaintiffs ahead of other applicants. Plaintiffs have not

met their burden of establishing that the balance of equities or the public interest weighs in their favor.

## CONCLUSION

Plaintiffs' motion fails straight out of the gate as the Court lacks jurisdiction over the claims asserted. Even were that not the case, the motion seeks impermissible relief and Plaintiffs have not demonstrated a likelihood of success on the merits. For many, independent reasons, the motion should be denied.

Date: July 17, 2026

Respectfully submitted,


GREGORY W. KEHOE
United States Attorney

By: *__/s/Amanda Saylor__*
Amanda Saylor
Assistant United States Attorney
Lead Counsel for Defendants
Florida Bar No. 1031480
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6020
Facsimile: (813) 274-6198
Email: Amanda.Saylor@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF electronic filing system which will furnish copies of these documents to all registered counsel of record.

Dated: July 17, 2026

Signed:

*/s/Amanda Saylor*
Amanda Saylor
Assistant United States Attorney