**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | | |
|---|---|---|
| Idania M. ACOSTA REYNOSO, *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | Case No.: 8:26-CV-01314-VMC-NHA |
| | § | |
| v. | § | **PLAINTIFFS' MEMORANDUM** |
| | § | **ON ORDER TO SHOW CAUSE** |
| U.S. Citizenship and Immigration | § | |
| Services; *et al.,* | § | |
| | § | |
| *Defendants*. | § | |

## <u>PLAINTIFFS' MEMORANDUM ON ORDER TO SHOW CAUSE</u>

Pursuant to this Court's Order on July 30, 2026, Plaintiffs respectfully submit this memorandum addressing the following: (1) why Plaintiffs whose petitions have been adjudicated should not be dismissed for lack of standing, (2) whether venue is in the Middle District of Florida is proper for all Plaintiffs, and (3) why the remaining Plaintiffs' claims should not be severed from this action pursuant to Fed. R. Civ. P. 21, as permissive joinder is appropriate under Fed. R. Civ. P. 20.

Plaintiffs are 143 Cuban nationals who were lawfully admitted or paroled into the United States and have filed Form I-485 petitions for adjustment of status, or legal permanent residence, pursuant to the Cuban Adjustment Act (CAA), Pub. L. No. 89-732, 80 Stat. 1161, and Form I-765 petitions for employment authorization (or work permits) under this same statutory framework. As explained below, each of the 143 Plaintiffs' claims arising from their pending Form I-485s present a live and justiciable controversy, and mootness may apply only to some of their claims regarding their applications for work permits, because only a limited number of Form I-765 applications

1

have been granted since this action was commenced. *See Exhibit A* (Plaintiffs' Approved Form I-765s – Pre and Post Litigation). Crucially, none of the Plaintiffs have their Form I-485s adjudicated, and these claims therefore remain live and justiciable in this litigation. *See Exhibit B* (Current Status of Plaintiffs' Form I-485s). Questions of proper venue in this multiparty litigation against federal defendants must be considered under 28 U.S.C.§ 1391(e), and Plaintiffs submit that venue is proper before the Middle District of Florida because the overwhelming majority of Plaintiffs reside in this district. As will be provided below, federal courts have consistently held that venue pursuant to 28 U.S.C.§ 1391(e) is proper where at least one of the plaintiffs is domiciled. To date, only 14 out of 143 Plaintiffs are domiciled within the jurisdiction of other federal district courts. *See Exhibit C* (Domicile for Plaintiffs). Therefore, Plaintiffs respectfully submit that, notwithstanding the 14 Plaintiffs who reside in other districts, the requirements for venue pursuant to 28 U.S.C. § 1391(e) are nevertheless satisfied. Finally, Plaintiffs submit that joinder of all claims brought by the 143 Plaintiffs in this litigation is proper pursuant to Fed. R. Civ. P. 21 because the Plaintiffs' claims against Defendants are properly joined under Fed. R. Civ. P. 20(a)(1).

I. **ADJUDICATION OF CERTAIN FORM I-765 APPLICATIONS DOES NOT ELIMINATE PLAINTIFFS' LIVE CLAIMS ON THEIR PENDING FORM I-485s**

   A. <u>**All of Plaintiffs' Applications for Permanent Residence (Form I-485s) Remain Unadjudicated and Therefore Present Live and Justiciable Claims**</u>

Plaintiffs in this action brought claims against Defendants relating to their pending applications for permanent legal residence pursuant to the CAA (Form I-485s), and their applications for work permits (Form I-765s) under this same statutory framework. While 10 Plaintiffs already had approved work permits before the commencement of this lawsuit, and four Plaintiffs have since

received approved work permits, none of the Plaintiffs' Form I-485s have been adjudicated since this action was brought. Therefore, Plaintiffs respectfully submit that dismissal for lack of standing would not be appropriate given that, even if some Form I-765s have been adjudicated, all of the Plaintiffs' claims as to their pending Form I-485s remain live and justiciable before this Court.

    1. <u>USCIS's Failure to Adjudicate the Plaintiffs' Pending Form I-485s and Form I-765s Is Causing Ongoing, Concrete Injury</u>

Plaintiffs whose Form I-485s and Form I-765s remain pending continue to face immigration limbo, including inability to obtain LPR status, ongoing immigration uncertainty, travel constraints, employment consequences where relevant, and continued exposure to the legal consequences of lacking legal status in the United States, including the risk of being detained by Immigration and Customs Enforcement (ICE), as USCIS has not adjudicated their applications for legal status in the United States despite their *prima facie* eligibility for this benefit. Available statistics on ICE's current enforcement and removal operations signal a significant increase in arrests and detentions for noncitizens like the Plaintiffs. Since January 2025, ICE's Miami Field Office, which is responsible for ICE operations in Florida, Puerto Rico, and the Virgin Islands, has made 41,310 arrests, with an average of 120 daily arrests reported by the Miami field office.[1] There are currently at least 65,765 noncitizens detained by ICE as of July 11, 2026.[2] The 143 Plaintiffs in this litigation are at significant risk of being detained and subjected to removal proceedings until they receive an adjudication on their pending Form I-485s.

    2. <u>The Relief Sought Remains Available and Would Redress Ongoing Injury</u>

---

[1] Americans for Immigrant Justice, Newsletter – April 2026, https://aijustice.org/2026/04/23/april-2026-newsletter/ (last accessed on June 4, 2026); see also, New York Times, New Data Shows Where ICE Has Been Most Active This Year, Mar. 20, 2026, https://www.nytimes.com/2026/03/20/us/ice-arrests-immigration-enforcement.html (last accessed on June 4, 2026).
[2] Transactional Records Access (TRAC) – Immigration Detention Quick Facts, https://tracreports.org/immigration/quickfacts/ (last accessed on August 12, 2026).

The relief sought by Plaintiffs in this action is the adjudication of their pending Form I-485s and Form I-765s, as USCIS has a non-discretionary duty to at least adjudicate and issue decisions on these pending applications. Plaintiffs acknowledge that USCIS does not have a duty *to approve* these applications; rather, Plaintiffs merely urge this Court to affirm that USCIS cannot outright deny its statutory duty to issue a decision (whether that decision be an approval or a denial) on applications for immigration benefits filed with the agency.

### B. **Mootness as it Relates to Plaintiffs' Form I-485s and Form I-765s**

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. An action runs afoul of this jurisdictional limitation "when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Nannini v. Manager,* No., 2026 U.S. Dist. LEXIS 21101 at *2 (S.D. Fla. Feb. 2, 2026) citing *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000). In conducting a mootness analysis, "[t]he fundamental question is whether events have occurred that deprive [the Court] of the ability to give the [plaintiff] meaningful relief." *Nannini, supra, citing Djadju v. Vega*, 32 F.4th 1102, 1107 (11th Cir. 2022) (*citing United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008)). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot" and "dismissal is required because mootness is jurisdictional." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). Mootness is distinct from standing, as an analysis of mootness requires the Court to "look at the events at the present time, not at the time the complaint was filed." *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001).

All 143 Plaintiffs in this litigation have pending Form I-485s, or applications for legal permanent residence, that have yet to be adjudicated by USCIS. Additionally, while a total of 14

4

Plaintiffs have approved work permits via their filed Form I-765s, the overwhelming majority of the remaining Plaintiffs are still pending a decision on their applications for work authorization. Therefore, Plaintiffs respectfully submit that dismissal of their claims for relief would be improper and premature, as the overwhelming majority of the Plaintiffs' have live and justiciable controversies as to both their Form I-485s and Form I-765s.

## II.   VENUE IS PROPER BEFORE THE MIDDLE DISTRICT OF FLORIDA FOR ALL 143 PLAINTIFFS

### A. Venue in Actions Against Federal Agencies or Employees Thereof Acting in an Official Capacity

Pursuant to 28 U.S.C. § 1391(e), a civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in an official capacity may be brought in any judicial district in which the plaintiff resides if no real property is involved in the action. 28 USCS § 1391(e).

For purposes of venue, a natural person shall be deemed to reside in the judicial district in which that person is domiciled. 28 USCS § 1391(c)(1). Venue is proper in this District for all 143 plaintiffs in this multiparty litigation because at least one of the plaintiffs is domiciled in this district. Federal courts have consistently held that "…the statutory language in 28 U.S.C. § 1391(e)(3) regarding the residency of "the plaintiff" should be interpreted to mean *any* plaintiff rather than *all* plaintiffs." *See A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1301 (N.D. Ala. 2003) citing over thirty years of federal precedent on this issue, including *Sidney Coal Co., Inc. v. Massanari*, 221 F. Supp. 2d 755, 766-767 (E.D. Ky 2002); *Favereau v. United States*, 44 F. Supp. 2d 68, 70 (D.Me.1999); *Minn-Dak Farmers Co-op. v. Espy*, 851 F. Supp. 1423, 1425 (D.N.D.1994); Aug. 12 order filed in *NCA v. Shalala*, No. CV 94-H-0780-S (N.D. Ala.1994);

*Finley v. National Endowment for the Arts*, 795 F. Supp. 1457, 1466-67 (C.D. Cal.1992), aff'd 100 F.3d 671 (9th Cir.1996), rev'd and remanded on other grounds by 524 U.S. 569, 141 L. Ed. 2d 500, 118 S. Ct. 2168 (1998); *Ry. Labor Executives Association v. ICC*, 958 F.2d 252, 256 (9th Cir.1991); *National Air Traffic Controllers Association v. Burnley*, 700 F. Supp. 1043, 1045 (N.D. Cal.1988); *Jewish War Veterans v. U.S.*, 695 F. Supp. 1, 2 n.3 (D.D.C.1987); *National Treasury Employees Union v. Von Raab*, 649 F. Supp. 380, 383 (E.D. La.1986), vacated on the merits, 816 F.2d 170 (5th Cir.1987); *Santa Fe International Corp. v. Watt,* 580 F. Supp. 27, 29 n.4  [*1302] (D.Del.1984); *Amoco Production Co. v. United States Dep't of Energy,* 469 F. Supp. 236, 242 (D.Del.1979); *Columbia Power Trades Council v. United States Dep't of Energy*, 496 F. Supp. 186, 189 (W.D. Wash.1980), vacated and remanded for want of subject matter jurisdiction, 671 F.2d 325 (9th Cir.1982); *National Distillers and Chemical Corp. v. Dept. of Energy,* 487 F. Supp. 34, 36 (D. Del.1980); *Standard Oil v. FTC*, 1979 U.S. Dist. LEXIS 13434, No. H 78-485, 1979 WL 1605, *1-*2 (N.D. Ind. March 28, 1979); *Dow Chemical, USA v. Consumer Prod. Safety Commission*, 459 F. Supp. 378, 384 n.4 (W.D.La.1978); *Exxon Corp. v. FTC*, 588 F.2d 895, 898-99 (3d Cir. 1978); *Kenyatta v. Kelley*, 430 F. Supp. 1328, 1330, n.7 (E.D. Pa.1977); *Candarini v. Attorney Gen. of U.S.*, 369 F. Supp. 1132, 1135 (E.D.N.Y.1974); *Holtzman v. Richardson*, 361 F. Supp. 544, 552 (E.D.N.Y.1973), rev'd on other grounds sub. nom. *Holtzman v. Schlesinger*, 484 F.2d 1307 (2d Cir.1973); *Natural Res. Def. Council, Inc. v. TVA*, 340 F. Supp. 400, 405-06 (S.D.N.Y.1971), rev'd on other grounds, 459 F.2d 255 (2d Cir.1972); *Environmental Defense Fund, Inc. v. Corps of Engineer*s, 325 F. Supp. 728, 731-32 (E.D. Ark. 1971), aff'd 470 F.2d 289 (8th Cir. 1972);

Most recently, this Court applied the same reasoning in *Colonel Fin. Mgmt. Officer v. Austin,* No.: 8:22-cv-1275-SDM-TGW, 2022 U.S. Dist. LEXIS 153591, at *5 (M.D. Fla. Aug. 18,

6

2022) (applying *A.J Taft Coal Co., supra,* and affirming that "[B]ecause the complaint includes four plaintiffs representing a ripe claim and residing in the Middle District of Florida, the Middle District of Florida is a proper venue for each plaintiff."). Therefore, Plaintiffs respectfully submit that venue is proper for all Plaintiffs in this action because at least one, if not the overwhelming majority, of the 143 Plaintiffs are domiciled in the Middle District of Florida. *See Exhibit C* (Table of Current Domicile for Plaintiffs).[3]

  1.  Venue Is Proper in this District Because at Least One Plaintiff with a Live and Justiciable Claim Resides in This District

Plaintiffs submit that venue in the Middle District of Florida is proper under 28 U.S.C. § 1391(e) because at least one of the plaintiffs is domiciled in this district. 28 U.S.C. § 1391(e) governs a civil action in which the defendant is the United States, a federal agency, or a federal officer or employee acting in an official capacity. This is the provision governing venue in the present litigation because the Defendants are both federal agencies and officers or employees of those same agencies. Further, venue is proper in an action arising under the Administrative Procedure Act (APA) in any judicial district in which (a) a defendant in the action resides, (b) a substantial part of the events or omissions giving rise to the claim occurred, or (c) the plaintiff resides if no real property is involved. 28 U.S.C. § 1391(e); *see also, Hight v. United States Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1184 (S.D. Fla. 2019).

This multiparty litigation falls squarely within that framework. Plaintiffs' claims against the federal Defendants arise under the APA and concern their Form I-485 and Form I-765 petitions filed with USCIS pursuant to the CAA. The action does not involve real property. As of the filing

---

[3] For ease of reference, the 14 Plaintiffs who are domiciled outside of the Middle District of Florida have been highlighted in *Exhibit C.*

of the Third Amended Complaint, 129 of the 143 Plaintiffs reside in the Middle District of Florida. Those facts satisfy venue requirements under 28 U.S.C. § 1391(e). *See Exhibit C.*

Therefore, venue in the Middle District of Florida is not improper merely because fourteen of the Plaintiffs reside outside of this district. The relevant statutory text permits suit where "the plaintiff resides if no real property is involved," and federal courts have consistently interpreted this provision in multi-plaintiff actions by asking whether at least one of the plaintiffs reside in the district where the action is brought. *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1301 (N.D. Ala. 2003). In this action, 129 out of 143 Plaintiffs reside in the Middle District of Florida, and therefore, because at least one of the Plaintiffs resides in this district, venue in the Middle District of Florida is proper pursuant to 28 U.S.C. § 1391(e).

2.  Venue Is Also Proper in the Middle District of Florida Because This District Is Inherently Connected to the Adjudication of Plaintiffs' Applications

Venue is also proper under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred, or will occur, in the Middle District of Florida. Section 1391(e)(1) permits venue in a district "in which . . . a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *C.M. v. Noem*, 796 F. Supp. 3d 1198 (S.D. Fla. 2025). Federal courts applying § 1391 have recognized venue as proper where the challenged federal actions giving rise to the plaintiff's claims occurred. *Fla. Keys Citizens Coal., Inc. v. United States Army Corps of Eng'rs*, 374 F. Supp. 2d 1116 (S.D. Fla. 2005).

The Middle District of Florida is the district in which the USCIS office responsible for Plaintiffs' applications will make, or is expected to make, the adjudicatory decision on those applications. The Court's prior Order recognized the Government's own venue position that "the

8

proper venue for those Plaintiffs' claims is either in the district where the USCIS field office processing their application is located or where the Plaintiffs actually reside." On both measures, the Middle District of Florida is proper: Plaintiffs resided here when they filed their applications, and the USCIS field office in this District is the office assigned to process and decide Plaintiffs' Forms I-485 and I-765.

The anticipated adjudication by the USCIS field office in the Middle District is a central event giving rise to Plaintiffs' claims because Plaintiffs seek relief directed to the processing and decision of their pending Form I-485s and I-765s. Plaintiffs allege that USCIS has failed to render adjudicative decisions on their applications for over three years in certain cases, leaving them in a state of prolonged and indefinite immigration limbo. The adjudication—or the failure to complete adjudication— by the relevant field offices in this district is not a peripheral fact. It is the core event that defines Plaintiffs' claims under the APA and the Mandamus Act.

In *Fla. Keys Citizens Coalition, Inc. v. United States Army Corps of Eng'rs*, *supra,* the Southern District of Florida held that venue was proper as to the federal Defendants under § 1391(e) because the actions giving rise to Plaintiffs' claims occurred there. Similarly, in *C.M. v. Noem*, the court recognized that § 1391(e)(1)(B) permits venue where "a substantial part of the events or omissions giving rise to the claim occurred." *C.M. v. Noem*, 796 F. Supp. 3d 1198 at 1226. Here, the events giving rise to Plaintiffs' claims include both the filing of the applications in the Middle District of Florida and the ongoing failure by the USCIS office in this District to adjudicate those applications. Both the filing and the anticipated adjudication are tied to this District. Further, the Government does not dispute that the USCIS field office in the Middle District of Florida is the office that will decide, or is assigned to process and decide, Plaintiffs' applications. For numerous Plaintiffs, including 24 Plaintiffs who have received interview notices

9

from the Tampa Field Office only after this action was brought, substantial adjudicatory activity is occurring in this District.

Venue does not require that every relevant event occur in the chosen district; § 1391(e)(1)(B) requires only that a substantial part of the events or omissions giving rise to the claim occurred there. *Id.* The relevant events here include Plaintiffs' filing of their applications while residing in the Middle District and the adjudicatory action to be taken by the USCIS office in this District. Those are not peripheral facts. They are the source of the agency action and inaction challenged in this case.

Any argument that Plaintiffs' later physical presence elsewhere defeats venue should be rejected. Venue is determined at the time the action is commenced, and the substantial events giving rise to the claim—the filing of the applications in this District and the adjudication by the USCIS office in this District—are anchored here. The Court in *C.M. v. Noem* recognized that § 1391(e) applies a transactional test, asking where a substantial part of the events giving rise to the claim occurred, not where every possible event might occur. *Id.* Here, both the filing and the adjudication are substantial parts of the events giving rise to Plaintiffs' unreasonable-delay claims, and both are tied to the Middle District of Florida.

Accordingly, venue is also proper in the Middle District of Florida under 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events giving rise to Plaintiffs' claims—the filing of their applications and the adjudication by the USCIS field office—occurred or will occur in this District.

### III.    PLAINTIFFS' CLAIMS ARE PROPERLY JOINED IN THIS LITIGATION PURSUANT TO FED. R. CIV. P. 20 AND SHOULD NOT BE SEVERED

#### A. <u>The 143 Plaintiffs' Claims are Properly Joined Pursuant to Fed. R. Civ. P. 20</u>

Since venue before the Middle District of Florida is proper, Plaintiffs also respectfully submit that their claims are properly joined under Fed. R. Civ. P. 20, and accordingly, these claims should not be severed. Pursuant to Fed. R. Civ. P. (20)(a)(1), persons may join in one action as plaintiffs if: (1) they assert rights to relief arising from the same transaction or occurrence, or series of transactions or occurrences, and (2) there is a common question of law or fact. It is well-established that the purpose of this rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits. *See, e.g., Lawson v. McGee,* No.: 19-81526-CV-RUIZ, 2020 U.S. Dist. LEXIS 159578 at *31 (S.D. Fla. Aug. 27, 2020) *citing Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). Additionally, the Supreme Court has affirmed that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

Therefore, permissive joinder under Fed. R. Civ. P. 20 is construed broadly. Other courts in this circuit have recognized that "[n]o hard and fast rules" have been established for determining whether multiple factual situations create the same transaction or arise out of a series of transactions, and a 'case by case' inquiry is generally used." *Lawson v. McGee, supra, citing Heard v. Martin Cty. Sheriff's Office,* No. 13-14364-CIV, 2014 U.S. Dist. LEXIS 203555, 2014 WL 12770093, at *13 (*quoting Mosley*, 497 F.2d at 1333). The U.S. Supreme Court has indicated that 'transaction' connotes a series of incidents bearing a 'logical relationship.'" *Heard*, 2014 U.S. Dist. LEXIS 203555, 2014 WL 12770093, at *13 (*citing Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610, 46 S. Ct. 367, 70 L. Ed. 750 (1926)).

Plaintiffs in this lawsuit are all Cuban nationals and citizens challenging USCIS's delayed adjudication of the same immigration benefit requests, namely, their Form I-485s filed under the CAA and their related Form I-765 applications. All of the Plaintiffs' causes of action arise under the same statutory framework found in the APA and the Mandamus Act. Their claims also arise against the same federal agency defendants and concern the same asserted agency delay, including delays allegedly affected by the unlawful policies advanced by USCIS's Adjudication Hold Policy (as memorialized in policy memoranda PM-602-0192 and PM-602-0194). Plaintiffs therefore submit that their claims arise from the same transaction or occurrence, or series of occurrences, and that their claims share a common question of law or fact. And importantly, this Court has previously recognized that "[t]he second prong of Fed. R. Civ. P. 20 does not require that all questions of law and fact raised by the dispute be common, but only that some question of law or fact be common to all parties." *Schwartz-Safko v. UMA Educ., Inc.,* No.: , 2025 U.S. Dist. LEXIS 14883 at *4 (M.D. Fla. Jan. 28, 2025).

Additionally, similar cases challenging agency decisions in the immigration context also confirm that joinder is appropriate where plaintiffs challenge common agency policies or procedures applied to a group. For example, in *Jean v. Meissner*, 90 F.R.D. 658 (S.D. Fla. 1981), joinder was proper where Haitian refugees asserted common claims against immigration officials challenging the same INS policies and procedures. Likewise, in *Doe v. Bondi*, 785 F. Supp. 3d 1268 (N.D. Ga. 2025), plaintiffs challenging coordinated DHS action through SEVIS satisfied Fed. R. Civ. P. 20 because their claims arose from a common series of agency actions and presented common legal questions.

Similarly, in this litigation, the Court should not sever the Plaintiffs' claims because the claims all arise from the same unreasonable delay in the adjudication of their pending Form I-485

12

and Form I-765 applications pursuant to the CAA, which had been exacerbated by USCIS' Adjudication Hold Policy. Plaintiffs' causes of action also arise in relation to common questions of law that include: 1) whether Defendants owe a duty to adjudicate pending applications within a reasonable time; 2) whether the alleged delays are judicially reviewable under the APA and Mandamus Act; 3) what legal standard governs unreasonable delay; 4) whether Defendants' explanations for the delays are legally sufficient; and 5) whether the Court possesses authority to compel adjudication if unreasonable delay is established. Resolution of these legal questions will apply equally to every remaining Plaintiff regardless of each individual's immigration history. Moreover, even where individualized facts become relevant to application of the unreasonable-delay standard, courts routinely resolve such issues without requiring separate lawsuits.

## B.  <u>Permissive Joinder of the 143 Plaintiffs' Claims Serves the Interest of Justice and Judicial Economy</u>

Additionally, severance of Plaintiffs' claims would neither serve the interests of justice nor promote judicial economy. Fed. R. Civ. P. 20 is intended to promote judicial economy, reduce unnecessary litigation, and avoid inconsistent adjudications, and courts therefore construe it liberally in favor of joinder. Even where joinder is proper, Fed. R. Civ. P. 21 grants courts discretion to sever claims where doing so would further convenience and promote judicial economy. However, severance in this litigation would undermine the interests of justice and the efficient administration of the Plaintiff's claims against the Defendants.

Fed. R. Civ. P. 20 permits plaintiffs to join in one action where their claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and present at least one "question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1). The Eleventh Circuit applies a flexible "logical relationship" test in determining whether claims arise from the same

transaction or series of transactions. *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985); *see also Constr. Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998). Courts in this circuit have also held that a "pattern or practice" may "describe such logicially related events and satisfy the transaction requirement." *See Gittens v. Sch. Bd. Of Lee Cty.,* No.: 2-16-cv-412-FtM-99MRM, 2018 U.S. Dist. LEXIS 23277 at *4 (M.D. Fla. Feb. 13, 2018) (quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1323 (11th Cir. 2000), overruled other grounds, *Manders v. Lee, 338 F.3d 1304* (11th Cir. 2003)).

That standard is satisfied here. The 143 Plaintiffs are Cuban nationals who seek adjustment of status under the same statutory framework and challenge Defendants' failure to timely adjudicate the same types of immigration benefit requests. Each Plaintiff has filed a Form I-485 application for adjustment of status, and Plaintiffs allege that Defendants have failed to adjudicate those applications within a reasonable period. Their claims are asserted against the same federal agencies and officials, arise from substantially similar agency conduct or inaction, and seek substantially the same relief: an order requiring Defendants to perform their alleged nondiscretionary duty to adjudicate Plaintiffs' pending applications. The claims likewise present common legal questions concerning Defendants' duty to adjudicate the applications and whether the delays are unreasonable under the Administrative Procedure Act and Mandamus Act.

The existence of individualized facts concerning particular applications does not, standing alone, require severance. Plaintiffs do not contend that their applications are identical. Filing dates, processing histories, and the length of individual delays necessarily vary. But Fed. R. Civ. P. 20 requires a logical relationship and a common question of law or fact; it does not require that every fact be common to every plaintiff. Although each Plaintiff filed an individual Form I-485 and Form I-765, the relevant "transaction" for purposes of Fed. R. Civ. P. 20 is not the filing of each

14

application in isolation. Rather, it is Defendants' common course of conduct in failing to adjudicate a group of similarly situated applications despite having a nondiscretionary obligation to process them within a reasonable time. Fed. R. Civ. P. 20 expressly contemplates joinder based upon a "series of transactions or occurrences," recognizing that claims need not arise from one identical event. Courts routinely interpret this language broadly where plaintiffs challenge the same governmental conduct, policy, or practice, even if each plaintiff's factual circumstances vary in some respectsThe common nucleus here is Defendants' alleged failure to timely adjudicate substantially similar applications for the same immigration benefit submitted by similarly situated Cuban nationals, coupled with common questions concerning the legality of that agency inaction.

Nor would severance advance the purposes underlying Rules 20 and 21. Severing this action into as many as 143 separate proceedings would require numerous courts—or multiple proceedings before this Court—to address substantially overlapping questions concerning the same statutory framework, the same federal defendants, the same alleged adjudicatory duties, and the same standards governing unreasonable delay. It would also require duplicative pleadings, motions, administrative-record materials, and potentially discovery, while creating a risk of inconsistent determinations concerning common legal issues. Those inefficiencies are particularly pronounced where individualized matters concerning particular Plaintiffs can instead be addressed through appropriate case-management procedures without dismantling the action as a whole.

The Eleventh Circuit has recognized that the Rules governing joinder are intended to promote trial convenience, expedite resolution of disputes, and prevent multiple lawsuits, provided that joinder does not result in unfair prejudice. *See Alexander v. Fulton Cnty.*, *supra* at 1323 (11th Cir. 2000). Those considerations weigh against severance here. Maintaining the Plaintiffs' logically related claims in a single action permits the Court to resolve the common legal and factual

15

questions efficiently while retaining the ability to address material differences among individual applications as necessary.

Accordingly, because Plaintiffs' claims bear a logical relationship to one another, present common questions of law and fact, and can be adjudicated together without unfair prejudice to Defendants, permissive joinder remains appropriate. Severance under Fed. R. Civ. P. 21 would multiply proceedings without corresponding benefit and would undermine, rather than advance, the interests of justice and judicial economy. The principal purpose of Fed. R. Civ. P. 20 is to promote trial convenience and expedite the final determination of disputes. Severing the remaining Plaintiffs would accomplish the opposite. If severed, the Court would likely be required to preside over more than one hundred separate actions presenting substantially identical legal questions concerning the Plaintiffs' claims under the APA and the Mandamus Act, the existence of a duty to adjudicate, and the legal framework governing unreasonable delay. The Government would repeatedly litigate the same motions to dismiss, jurisdictional questions, discovery disputes (if any), and summary judgment issues. Such duplication would unnecessarily burden both the Court and the parties. Even more importantly, severance would create a significant risk of inconsistent judicial rulings regarding identical legal issues arising from the same alleged course of agency conduct. One court could conclude that the delays are reviewable under the APA while another could reach the opposite conclusion. Fed. R. Civ. P. 20 exists precisely to avoid that inefficiency. Severance would inevitably multiply litigation, increase costs for all parties involved, burden the judiciary, and risk inconsistent adjudications. Therefore, the Plaintiffs respectfully submit that the Court should decline to sever the remaining Plaintiffs' claims under Fed. R. Civ. P. 21, and should instead determine that the 143 Plaintiffs' claims are properly joined pursuant to Fed. R. Civ. P. 20.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court:

i.    Determine that Plaintiffs' claims as to their pending Form I-485s and Form I-765s are live and justiciable, and therefore should not be dismissed;

ii.    Alternatively, determine that: (a) the 10 Plaintiffs whose Form I-765s were adjudicated before this litigation lack standing only as to those Form I-765 delay claims; (b) the four Form I-765s adjudicated after this litigation commenced are moot as to only those I-765 delay claims (per Plaintiffs' *Exhibit A*);

iii.    All 143 plaintiffs retain live claims as to their pending Form I-485s;

iv.    Order that venue is proper in the Middle District of Florida based on the residence of at least one Plaintiff in this District under 28 U.S.C. § 1391(e);

v.    Alternatively, if the Court determines that venue is not proper for Plaintiffs residing outside the Middle District of Florida, transfer those Plaintiffs' claims to the appropriate district under 28 U.S.C. § 1406(a) or § 1404(a);

vi.    Find that joinder of Plaintiffs' claims is proper under Fed. R. Civ. P. 20(a)(1) and decline to sever under Fed. R. Civ. P. 21; and

vii.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Ismael Labrador**

_____
Ismael J. Labrador, Esq.
***Attorney for Plaintiffs***
FL Bar No.: 1030508
Gallardo Law Offices, P.A.
8492 SW 8th St
Miami, FL 33144
(305) 261-7000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the **PLAINTIFFS' MEMORANDUM IN RESPONSE TO ORDER TO SHOW CAUSE** and any attached pages was served upon the following parties on this 13th day of August 2026 via <u>E-SERVICE (CM/ECF)</u>:

**USCIS – c/o Office of the Chief Counsel**
5900 Capital Gateway Drive, Mail Stop 2120,
Camp Springs, MD 20588-0009

**Joseph B. Edlow – c/o Office of the Chief Counsel**
5900 Capital Gateway Drive, Mail Stop 2120,
Camp Springs, MD 20588-0009

**U.S. Department of Homeland Security – c/o Office of the General Counsel**
2707 Martin Luther King Jr. Ave, SE Mail Stop 0485
Washington, DC 20528-0485

**Markwayne Mullin – c/o Office of the General Counsel**
2707 Martin Luther King Jr. Ave, SE Mail Stop 0485
Washington, DC 20528-0485


Respectfully submitted,


**/s/ Ismael Labrador**

_____
Ismael J. Labrador, Esq.
***Attorney for Plaintiffs***
FL Bar No.: 1030508
Gallardo Law Offices, P.A.
8492 SW 8th St
Miami, FL 33144
(305) 261-7000