**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| IDANIA M. ACOSTA REYNOSO, ET AL.,<br>Plaintiffs,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL.,<br>Defendants. | Case No. 8:26-CV-1314-KKM-NHA |

## DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Defendants, by and through the undersigned counsel, move to dismiss the Third Amended Complaint, Doc. 33, ("TAC") under Federal Rules of Civil Procedure 12(b)(1), (6). The Court must dismiss this case for lack of subject-matter jurisdiction and failure to state a claim for relief.

## FACTUAL BACKGROUND

On May 4, 2026, this matter commenced when Plaintiffs filed a complaint. Doc. 1. Three amended complaints have now been filed, each adding additional Plaintiffs. *See* Docs. 11, 19, 33. In the TAC Plaintiffs raise five causes of action under the Administrative Procedure Act ("APA") and Mandamus Act. Doc. 33. The TAC alleges that Defendant United States Citizenship and Immigration Services ("USCIS") has unreasonably delayed Plaintiffs' Forms I-485, Application to Register Permanent Residence or Adjust Status, and I-765, Application for Employment Authorization. Plaintiffs allege that those delays are exacerbated by three nationwide policy

memoranda issued by USCIS: (1) Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries (PM-602-0192),[1] (2) Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries (PM-602-0194),[2] and (3) Adjustment of Status is a Matter of Discretion and Administrative Grace, and an Extraordinary Relief that Permits Applicants to Dispense with the Ordinary Consular Visa Process (PM-602-0199)[3] (collectively the "Challenged Policies"). All Counts should be dismissed.

First, Plaintiffs' claims are jurisdictionally barred. Second, some Plaintiffs' claims are now moot. Finally, Plaintiffs fail to state a claim of relief for unreasonable delay.

## BACKGROUND

### I. Adjustment of Status Pursuant to the Cuban Adjustment Act ("CAA")

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537, governs how aliens obtain visas to enter, or are otherwise admitted to, the United States. It also governs the adjustment of status of nonimmigrants to permanent residence, a process which results in receiving lawful permanent residence.[4] The CAA was codified as a

---

[1] Available at https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf (last accessed Aug. 14, 2026).
[2] Available at https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf (last accessed Aug. 14, 2026).
[3] Available at https://www.uscis.gov/sites/default/files/document/memos/PM-602-0199-AdjustmentOfStatusAndDiscretion-20260521.pdf (last accessed Aug. 14, 2026).
[4] *See* Adjustment of Status, USCIS, https://www.uscis.gov/green-card/green-card-processes-and-procedures/adjustment-of-status (last accessed Aug. 14, 2026). At the motion to dismiss stage, the Court "may take judicial notice . . . of relevant public documents . . . [and] facts that are not subject

historic note to 8 U.S.C. § 1255, which allows the Attorney General, "in his discretion and under such regulations as he may prescribe," to adjust an alien's status to that of a lawful permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255. The CAA allows the Attorney General, in his *discretion*, to adjust the status of natives or citizens of Cuba. Pub. L. No. 89-732, 80 Stat. 1161, as amended 8 U.S.C. § 1255 note (Supp. 2010) (emphasis added); *see also Hayes v. Swacina,* No. 14-CV-22506-KMM, 2015 WL 12778781, at *3 (S.D. Fla. Mar. 31, 2015).

Thus an alien may seek adjustment of status under the CAA if he or she is a native or citizen of Cuba, was inspected and admitted or paroled into the United States and meets the physical presence requirement. Pub. L. No. 89-732, § 1; *see also United States v. Estrada*, 969 F.3d 1245, 1261 (11th Cir. 2020). The CAA "gives complete discretion over the adjustment of immigration status to USCIS." *Hayes,* 2015 WL 12778781, at *3; *Martinez v. Noem*, No. 25-CV-23758-RAR, 2026 WL 472311, at *3 (S.D. Fla. Feb. 19, 2026). And the pace at which that decision is made is also discretionary, thus the Court lacks jurisdiction under the Mandamus Act and the APA

---

to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (citing Fed. R. Evid. 201); *see also Watts v. Joggers Run Prop. Owners Ass'n, Inc.*, 133 F.4th 1032, 1036 n.3 (11th Cir. 2025) (taking judicial notice of information on defendant's website at motion to dismiss phase).

to intervene. *Vega v. Noem*, No. 25-CV-26047-RAR, 2026 WL 1740033, at *3 (S.D. Fla. Mar. 25, 2026).

**II. Presidential Directives and Challenged Policies**

On November 27, 2025, USCIS issued Policy Alert PA-2025-26, revising the USCIS Policy Manual to incorporate the effects of Presidential Proclamation 10949 (PP 10949), which suspended or limited entry of nationals from 19 specified countries. PA-2025-26 thus formalized the integration of PP 10949's country-specific national security considerations into USCIS discretionary adjudications and complemented USCIS Policy Memorandum PM-602-0192, which directed adjudicative holds and re-reviews of certain benefit applications for nationals of the same countries. PM-602-0194, issued on January 1, 2026, expanded the scope of PM-602-0192 by introducing additional country-based restrictions and clarified that the adjudication "hold" means "a case [can] proceed through processing, up to final adjudication," with "only the decision deferred" thus "if a hold is in place, the case can continue to move forward until ready for a decision." PM-602-0194 at 2 n.2. PM-602-0199, issued on May 21, 2026, operates as a reminder to USCIS personnel and the public that adjustment of status is discretionary and not intended to supersede the processes ordinarily used in adjudicating immigrant visas. PM-602-0199 at 1. Those ordinary processes include a preference for consular processing of immigrant visas. *Id.* at 3.

As this Court has already twice noted, in response to the June 5, 2026 decision and judgment subsequently issued in the Rhode Island case *Dorcas International Institute of Rhode Island, et al. v. United States Citizenship and Immigration Services, et al*, No. 26-cv-

132-JJM-PAS ("*Dorcas*"), USCIS has now publicly posted notice on its website that the Challenged Policies "should be treated as if they are not in effect." *See* Doc. 29, p. 8; Doc. 41, pp. 7-8; *see also* Court Order on Hold Policies (June 12, 2026) (available at https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies)(last accessed Aug. 14, 2026). Accordingly, USCIS is processing Plaintiffs' applications with some decisions having already issued and those still pending awaiting adjudication in accordance with normal processing procedures.

And while PM-602-0199 remains in effect it does not apply to the CAA, which is not "an exception to the regular consular process"—PM-602-0199, p. 6—because it is a special program available only to Cuban nationals, their spouses and children, *inter alia*, physically present in the U.S., and not at a consulate. Pub. L. No. 89-732, § 1.

## LEGAL STANDARD

A Rule 12(b)(1) motion may present "either [a] facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A facial attack accepts the facts alleged as true, requiring the Court to determine only whether those facts sufficiently allege jurisdiction. *Id.* at 1232-33. A Rule 12(b)(6) motion challenges a complaint for failing to state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive, the pleading must allege facts supporting a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

## ARGUMENT

### I. The Court Lacks Jurisdiction Over Plaintiffs' Claims.

A. Counts I, II, and V should be dismissed because relief under the APA is jurisdictionally barred as these decisions are discretionary.

This Court lacks jurisdiction to order Defendants to adjudicate Plaintiffs' Form I-485 and Form I-765 applications because the decision of when to adjudicate those applications falls within the discretion of certain executive agencies. *See Martinez*, 2026 WL 472311, at *2-4 (finding no jurisdiction under either APA or mandamus over claims related to Form I-485 application); *Hernandez Sierra v. Mullins et al.,* No. 26-CV-61022 (S.D. Fla. July 7, 2026), Dkt. 15, p. 2 (finding no jurisdiction over APA claims as related to Form I-485 and Form I-765 applications). Here, Plaintiffs challenge the pace at which USCIS is adjudicating their adjustment of status and employment authorization applications, decisions reserved to the discretion of USCIS and therefore not subject to judicial review. Indeed, "'[f]or this Court to have jurisdiction, it must find that Defendants have a non-discretionary duty as to the pace of adjudicating Plaintiff's Petition.'" *Vega*, 2026 WL 1740033, at *5 (quoting *Hasan v. Wolf*, 550 F. Supp. 3d 1342, 1346 (N.D. Ga. 2021)). See *Batista Mulet v. U.S. Citizenship & Immigr. Servs.*, No. 25-CV-24719, 2026 WL 1429279, at *6 (S.D. Fla. May 21, 2026) (granting in part government's motion to dismiss complaint alleging delay in adjudicating CAA adjustment of status, finding lack of jurisdiction and dismissing count relating to unreasonable delay, "because the pace of adjudication is discretionary,…"); *see also Lorente v. U.S. Citizenship & Immigr. Servs.*, No. 25-CV-25646, 2026 WL 1396116, at *8

(S.D. Fla. May 19, 2026) (same). APA review, however, is not available when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). Likewise, relief under the Mandamus Act is not available unless (1) Plaintiff has a clear right to relief, (2) USCIS has a clear duty to act; and (3) no other adequate remedy is available. *See* 28 U.S.C. § 1361; *see also Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011) (citing *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003)).

The Court is stripped of jurisdiction here first because the plain text of the CAA expressly commits the final grant of adjustment to the discretion of USCIS. *See* Cuban Adjustment Act, Pub. L. No. 89-732, 801 Stat. 1161, and Courts in this District have noted the CAA "'gives complete discretion over the adjustment of immigration status to USCIS.'" *Vega*, 2026 WL 1740033, at *5 (quoting *Hayes*, 2015 WL 12778781, at *3); *Martinez*, 2026 WL 472311, at *3, *Lorente*, 2026 WL 1396116, at *5. Similarly, the Eleventh Circuit has found that the APA does not provide the district court with jurisdiction to review USCIS's discretionary denial of an application for adjustment of status under the CAA. *See Garriga v. Hackbarth*, 548 Fed. Appx. 559 (11th Cir. 2013). Moreover, there is nothing in the CAA that prescribes a timeframe for the adjudication of an adjustment application. *Vega*, 2026 WL 1740033, at *6; *Lorente*, 2026 WL 1396116, at *6; *see also Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1205 (M.D. Fla. 2007) (with respect to an I-485 application, USCIS "has a nondiscretionary duty to act on an application . . . and a non-discretionary duty to adjudicate an application" but a "discretionary duty as to the pace of processing the application[.]" (emphasis in

original)). Thus, "even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830; *see also Osechas Lopez*, 649 F. Supp. 3d at 1286 ("Plaintiff has not demonstrated a clear right to the relief requested . . . largely because there is no congressionally or administratively prescribed timeframe within which USCIS has a duty to process or adjudicate I-526 petitions."). When there is no statutory or regulatory provision governing the pace of adjudication for a USCIS application, there is no identifiable standard against which the court can determine whether the agency "unlawfully withheld or unreasonably delayed" an adjudication and thus lacks jurisdiction to review a claim under the APA. *See generally Alfassi v. Garland*, 614 F.Supp.3d 1252, (S.D. Fla 2022); *Yilmaz v. Mukasey*, No. 08-21242, 2008 WL 11417739 (S.D. Fla. 2008); *Abdouch v. Mayorkas*, No. 3:24-cv-310, 2024 WL 5158772 (M.D. Fla. 2024).[5]

Likewise, the decision to delay the adjudication of a Form I-765 application is also discretionary. *Hernandez Sierra,* No. 26-CV-61022 (S.D. Fla July 7, 2026), Dkt. 15, p. 2. As explained by the court, this is so because "Congress has set out the Secretary's and the Attorney General's discretionary authority over the process of adjudication—*and hence the pace of adjudication*—in statutes, shielding it from judicial review." *Id.*

[5] Defendants recognize that this Court's order denying preliminary injunctive relief relied in part on the jurisdictional bar at 8 U.S.C. § 1252(a)(2)(B)(ii). Doc. 41, pp. 13-15. Defendants do not argue that bar here, but rather submit that, as the court held in *Vega*, where statute precludes judicial review—as the CAA does here—or where the agency action is committed to the agency's discretion by law—again, as is the case here—a court may not award relief.

(quoting *Beshir v. Holder*, 10 F. Supp. 3d 165, 176 (D.D.C. 2014)). Indeed, the underlying immigration regulations guiding the process of issuing EADs do not set clear standards. *See generally* 8 C.F.R. § 274a.12. As relevant here, "[a]n alien who has filed an [I-485] application for adjustment of status to lawful permanent resident," 8 C.F.R. § 274a.12(c)(9), is a member of a class of aliens who "must apply for work authorization," *see* 8 C.F.R. § 274a.12(c), as opposed to being automatically entitled to it. *See Kondapally v. U.S. Citizenship & Immigr. Servs.,* 557 F. Supp. 3d 10, 15, 19 (D.D.C. 2021) (explaining that § 274a.12(c)(9) permits filing of a Form I-765 "[d]uring the pendency of the I-485 application," and that a pending I-485 application is "a prerequisite for work authorization"). The immigration regulations further provide that "[t]he approval [or denial] of [I-765] applications filed under 8 C.F.R. § 274a.12(c) . . . are *within the discretion of USCIS*[,]" without any textual limitation on that discretion. *See* 8 C.F.R. § 274a.13(a)(1) (emphasis added); *see also Kondapally,* 557 F. Supp. 3d at 15 (recognizing that the process to adjudicate an I-765 application "is mentioned nowhere in the INA"). Indeed, the regulatory provisions "expressly reserve[] such determinations for USCIS." *Id.* at 26.

Consequently, "courts have routinely held" that I-765-related actions "are decisions committed to USCIS's discretion and outside the purview of judicial review." *Kondapally,* 557 F. Supp. 3d at 26; *see also Avila v. Sec'y, Dep't of Homeland Sec.*, No. 5:25-CV-406-JSM-PRL, 2025 WL 3852842, at *5 (M.D. Fla. Dec. 19, 2025), r*eport and recommendation adopted*, No. 5:25-CV-406-JSM-PRL, 2026 WL 27336 (M.D. Fla. Jan. 5, 2026) (discussing discretionary nature of adjudication of I-765 applications filed

incidental to I-485 applications); *see also Amrani v. Sec'y of DHS*, No. 25-cv-308, 2025 WL 3653594, at *3 (M.D. Fla. Dec. 17, 2025) (finding adjudication of employment authorization is discretionary and precluding judicial review under the APA and Mandamus Act); *Smith v. Garland*, No. 22-cv-1535, 2023 WL 3742978, at *6 (E.D. Wis. May 31, 2023); *Rodriguez v. Nielsen*, No. 16 Civ. 7092, 2018 WL 4783977, at *7 (E.D.N.Y. Sept. 30, 2018); *Khachutorov v. Britten*, 792 F. Supp. 3d 1106, 1114 (C.D. Cal. 2025); *Bestman v. DHS*, No. 20-cv-564, 2025 WL 358764, at *4 (D.D.C. Jan. 31, 2025). The same should hold true here.

B. APA relief is also not available because the Challenged Policies do not constitute final agency action.

In addition, Plaintiffs fail to identify a "final agency action" warranting APA relief. The APA authorizes judicial review of "final agency action" for which there is no other adequate remedy in a court. 5 U.S.C. § 704. There is no jurisdiction under the APA where the action challenged is not final. Two conditions must be satisfied for agency action to be final: (1) "the action must mark the 'consummation' of the agency's decision-making process, e.g., that 'it must not be of a merely tentative or interlocutory nature'" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). Consequently, finality requires that the decisionmaking process be complete. *See Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1255 (11th Cir. 2020). A challenged action fails the first prong of finality if it is "tentative or interlocutory" and does not express

an agency's "unequivocal position." *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943-44 (D.C. Cir. 2012) (holding that FDA's warning letters were not final where they contemplated possible, but not inevitable, enforcement action).

The Challenged Policies at PM-602-0192 and PM-602-0194 plainly arise from, and operate within, an expressly ongoing decision-making framework established by the Presidential Proclamation, which directed that the Secretary of State—in consultation with the Secretary of Homeland Security and other senior national security officials—must reassess the relevant conditions and recommend whether any suspensions or limitations imposed in connection with the Proclamation should be "continued, terminated, modified, or supplemented." *See* PP 10949, Section V. USCIS's issuance of PM-602-0194, which modified initial guidance found at PM-602-0192, confirms that the comprehensive re-review policies are neither fixed nor final. Instead, the Challenged Policies are reflective of whether particular applications are subject to additional review given the national security and public safety concerns that subsequently came to light.

The Challenged Policies are also not properly considered final agency actions because no rights or obligations flow from them. At most, they reflect a pause in an ongoing administrative process, one that remains open to further agency consideration. *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 496 (6th Cir. 2014) ("Congress has delegated to specific government agencies the task of enforcing immigration laws and determining aliens' immigration statuses. The agencies' decisionmaking process consummates when they issue a final decision regarding an

alien's immigration status. Termination of refugee status and denial of a status adjustment application are intermediate steps in the removal of an alien, and not the consummation of the agencies' decisionmaking on the alien's immigration status."). Thus, these determinations are not final agency action. *See Trump v. New York*, 592 U.S. 125, 131 (2020) ("Any prediction how the Executive Branch might eventually implement this general statement of policy is 'no more than conjecture' at this time.") (cleaned up). And the very text of PM-602-0199—the only policy that has not already been vacated—belies any argument that it constitutes final agency action when it explicitly provides that it "may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner." PM-602-0199, p. 6. Instead, this memorandum serves as a reminder to USCIS personnel of the discretionary nature of adjudications. *Id.* There is nothing in PM-602-0199 that would suggest that it marks the consummation of USCIS's decision-making process and there is rather strong language therein suggesting that *no* rights, obligations, or legal consequences are to be discerned from it.

C. For the same reasons the Court lacks jurisdiction to grant APA relief, it lacks jurisdiction to grant Mandamus relief. Counts III and IV must be dismissed.

The Mandamus Act permits a Court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, this relief is an extraordinary remedy appropriate only where the plaintiff has a clear right to the relief requested, the defendant has a clear duty to act,

and there is no other adequate remedy available. *Cash*, 327 F.3d at 1258. Here, the Court lacks jurisdiction to grant relief under the Mandamus Act because the CAA gives USCIS sole discretionary decision-making authority over the pace at which it adjudicates Plaintiffs' applications. *See* Cuban Adjustment Act, Pub. L. No. 89-732, 801 Stat. 1161. Further, Courts in this District have noted the CAA "'gives complete discretion over the adjustment of immigration status to USCIS.'" *Vega*, 2026 WL 1740033, at *5. In other words, USCIS does not have a clear duty to adjudicate Plaintiffs' applications on the timeline of their choosing. *See Avila*, 2025 WL 3852842 at *6 (finding that the decision to grant or deny a Form I-765—in other words the decision to adjudicate—does not involve a clear, nondiscretionary duty to act).

USCIS's decisions on when and how to adjudicate Plaintiffs' pending applications are within the exclusive purview of the agency. Neither the APA nor the Mandamus Act provide authority for judicial intervention. Because the Court lacks jurisdiction to grant the relief sought, Counts III and IV should be dismissed for lack of jurisdiction.

D. <u>All counts should be dismissed because Plaintiffs' claims are now moot.</u>

Federal courts may only hear "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. A court lacks jurisdiction where an action no longer presents a live controversy through which meaningful relief can be granted. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health and Rehab. Servs.*, 225 F.3d 1208, 1216-17 (11th Cir. 2000). The doctrine of mootness demands that the Court "look at the events at the present time, not at the time the complaint was filed . . . ." *Dow Jones & Co. v. Kaye*,

256 F.3d 1251, 1254 (11th Cir. 2001). And where events take place subsequent to the filing of the claim that would preclude a court from granting meaningful relief, the issue becomes moot and the case must be dismissed. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

To start, two of the Challenged Policies are no longer in effect. *See* Court Order on Hold Policies (June 12, 2026) (available at https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies) (last accessed Aug. 14, 2026). Accordingly, USCIS is processing Plaintiffs' applications with some decisions having already issued and those still pending awaiting adjudication in accordance with normal processing procedures. And the third Challenged Policy, PM-602-0199, does not apply to CAA adjudications. Rather, this policy merely articulates the government's "preference for aliens seeking to immigrate through the ordinary immigration process from abroad through consular processing." PM-602-0199, p. 3. This is important here because that "ordinary immigration process" is not available to CAA-applicants, who cannot consular process on account of their existing physical presence in the United States. *See* Pub. L. No. 89-732, § 1 (describing eligibility to see adjustment under the CAA). Thus, USCIS's issuance of a policy memorializing a preference for consular processing is simply not applicable to Plaintiffs, applicants seeking to adjust status under the CAA. Because two of the Challenged Policies are vacated and the third is inapplicable, claims tethered to those policies cannot survive dismissal.

Here, as Defendants previously represented at the injunction stage USCIS had previously issued decisions in some of the challenged I-765 applications. *See* Doc. 39, Ex. A. These Plaintiffs' challenges to the pace at which USCIS has adjudicated their I-765s no longer present a live case or controversy because those applications have now been adjudicated. And though several Plaintiffs indeed have pending EAD applications as reflected in the TAC, they also have separately sought—and received—employment authorization. *See* Doc. 39, Ex. B. Of note, though Plaintiffs continue assert in their most recent filing with the Court that "only a limited number of Form I-765 applications have been granted"—Doc. 46, pp. 1-2— to the contrary, between August 3, 2026 and August 12, 2026, USCIS issued decisions in 50 of Plaintiffs' pending I-765 applications, including those related to the following specific Plaintiffs:

| NAME | EAD receipt number |
|---|---|
| Yoania Acosta Cintado | IOE0932036733 |
| Idania Maria Acosta Reynoso | IOE0931414860 |
| Juan Luis Almeida Ross | IOE0931513062 |
| Luis Miguel Alvarez Ramos | IOE0932036735 |
| Ana Lucia Barzaga Hurtado | IOE0928349150 |
| Yusnaivis Bidopia Herrera | IOE0933580939 |
| Roberto Carlos Cabezas Medell | IOE0931859168 |
| Irina Castellanos Lemes | IOE9472018822 |
| Carlos Manuel Cedeno Fuentes | IOE0933021828 |
| Rafael Correosa Hernandez | IOE0932703303 |
| Juan Daniel De Urrutia Martinez | IOE0932245294 |
| Adriano Dominguez Gonzalez | IOE0932819582 |
| Elso Jairom Echemendia Roque | IOE0934720196 |
| Reynier Fernandez Begue | IOE0932678130 |
| Orlando Flores Vazquez | IOE0932304768 |
| Ocleivy Frankis Machado | IOE0932993362 |
| Shaili Fuster Gomez | IOE0932329062 |
| Juan Carlos Garcia Garcia | IOE0933165914 |
| Alisson De La Caridad Garcia Hurtado | IOE0933296024 |

| | |
|---|---|
| Adonys Garcia Rivera | IOE0929879214 |
| Adalberto Jesus Gaston Limonta | IOE0932308955 |
| Miguel Antonio Gomez Wittenberg | IOE0932974927 |
| Adalberto Gonzalez Enamorado | IOE0933254216 |
| Reynier Gonzalez Lion | IOE0931159304 |
| Anaisis Gonzalez Reyes | IOE0932703301 |
| Emilio Gonzalez Valdivia | IOE0933154230 |
| Nayla Tamara Grinan Leyva | IOE0933861000 |
| Carlos Alberto Hernandez Bernal | IOE0931610310 |
| Elias Israel Quiroz | IOE0932972812 |
| Dennis Lucas Guzman | IOE0931320686 |
| Abeniley Manso Napoles | IOE0931781012 |
| Rafael Reynaldo Martinez Cabrera | IOE0931581173 |
| Marcel Mendez Farinas | IOE0936089513 |
| Alejandro Morales Perez | IOE0931127697 |
| Luis Daniel Nunez Linares | IOE0932319264 |
| Luis Angel Ortiz Alejo | IOE0930774723 |
| Bryan Ortiz Arencibia | IOE0931526621 |
| Adrian Perez Borges | IOE0931528531 |
| Adrian Perez Nodar | IOE0933651916 |
| Junior Portales Lopez | IOE0932600575 |
| Ruben Eliser Ramos Chaviano | IOE0932700470 |
| Marileyvis Rodriguez Garcia | IOE0931187421 |
| Brian Ernesto Rodriguez Morales | IOE0932841037 |
| Amanda Rodriguez Riveron | IOE0930940558 |
| Luis Miguel Rodriguez Rocha | IOE0931867626 |
| Nitza Rojas Zuniga | IOE0933056964 |
| Eberto Sedano Herrera | IOE0933580941 |
| Pedro Luis Silva Hermosa | IOE0933245955 |
| Claudia Cecilia Valdivia Escalona | IOE0932100190 |
| Luis Daniel Valladares Diaz | IOE0932329061 |

Copies of notices of these decisions are reflected in "Exhibit A" attached to this filing, which are printouts from USCIS's publicly available case status tracking website, USCIS Case Status Online, available at https://egov.uscis.gov/.

Further, as Defendants conveyed to the Court in their response in opposition to Plaintiffs' motion for preliminary injunction, Doc. 39, many Plaintiffs have now been

interviewed regarding their Form I-485s, a step in the adjudicatory direction undermining Plaintiffs' inaction claims. *See* Doc. 39, Ex. C; *see also Meixian Ye v. Kelly*, No. 17-cv-3010, 2017 WL 2804932, at *2 (E.D.N.Y. Jun. 28, 2017) (dismissing action after USCIS had issued a Request for Evidence, which undermined the inaction-predicate for an unreasonable delay claim under the APA). As of this filing, two decisions have issued following Friday's adjustment interviews. *See* USCIS Case Status Online, available at [https://egov.uscis.gov/](https://egov.uscis.gov/) for applications corresponding to receipt numbers MSC2490186547 and MSC2490421868 (copies attached as "Exhibit B"). Additional decisions stemming from the August 14, 2026 interviews are forthcoming. As to each of these applications—final decisions issued or not—there is no active case or controversy pending because adjudication has resumed, and the Court lacks jurisdiction over these claims. Finally, with the lift of the adjudicative holds brought on by the two—now vacated—Challenged Policies, adjudication has resumed across the board, arguably mooting all Plaintiffs' claims of delay.

## II. Plaintiffs Fail to State a Claim for Relief Under the APA.

### A. <u>Counts I and II should be dismissed because Plaintiffs fail to adequately state a claim of agency action unlawfully withheld or unreasonably delayed.</u>

The Supreme Court has held that the passage of time alone cannot support a claim of unreasonable agency delay. *INS v. Miranda*, 459 U.S. 14, 19 (1982). Rather, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir.

2003). To guide their analysis in determining reasonableness, Courts often look to the so-called *TRAC* factors. *See Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). The six *TRAC* factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; 3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.
>
> *TRAC*, 750 F.2d at 80.[6]

***The Agency Follows a Rule of Reason.*** USCIS generally adjudicates I-485s and I-765s on a first in and first out basis. *See e.g.*, https://egov.uscis.gov/processing-times (from the drop-down menu select "I-765, Application for Employment Authorization" "Based on a Pending I-485" and "Service Center Operations (SCOPS)" (as of Aug. 14, 2026) ("We generally process cases in the order we receive them."). Here, Plaintiffs allege that their I-485s and I-765s have been pending for periods spanning 5 to 34 months—Doc. 33, ¶¶ 16, 50, 178—and courts have found similar periods insufficient to support an unreasonableness finding. *See Otto*, 2023 WL 2078270, at *5 (finding

[6] In the Eleventh Circuit, those courts that have proceeded with consideration of the *TRAC* factors have largely done so where the *TRAC* factors were independently raised at the pleadings stage, as is the case here. *See, e.g.*, *Osechas Lopez*, 649 F. Supp. 3d at 1287; *Otto v. Mayorkas*, No. 8:22-cv-1172-WFJ-SPF, 2023 WL 2078270 at *4 (M.D. Fla. February 17, 2023).

delay of less than three years from the filing of the petition to the filing of the Complaint not unreasonable as a matter of law); *see also Osechas Lopez v. Mayorkas*, No. 22-civ-21733, 2023 WL 152640, at *5 (S.D. Fla. Jan. 10, 2023) *5 (27.5 month delay); *Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *6 (D.D.C. July 19, 2022) (32 months); *Telles v. Mayorkas*, No. 21-cv-395 (TJK), 2022 WL 2713349, at *4 (D.D.C. July 13, 2022) (42 months).

***There is No Mandatory Timetable.*** Congress has not specified a timeframe in which USCIS must adjudicate I-485 applications. Rather, Congress granted the Secretary the ability to create regulations "as he may prescribe" regarding the adjustment of such applications. 8 U.S.C. §1255(a). Nor has Congress established a timetable for adjudication of either form type, weighing this factor in favor of Defendants. *See Tikhonov v. Mayorkas*, No. 23-24572-CIV, 2024 WL 4692146, at *6 (S.D. Fla. Nov. 6, 2024) (finding factor irrelevant where no Congressionally established timetable has been offered); *see also Jiwani v. Dir. of United States Citizenship & Immigr. Servs.*, No. 1:25-CV-2847-MHC, 2026 WL 788945, at *10 (N.D. Ga. Mar. 18, 2026) (same).

***Health and Human Welfare are Not at Stake and Interests Are Not Prejudiced.*** Plaintiffs assert in the TAC that their interests have been prejudiced by lack of "work authorization, LPR status, family stability"—Doc. 33, ¶ 184—but as discussed *supra* some I-765 applications have now been approved. As to the remaining interests, as the Court found in *Davies v. Emmel*, "the inability to move forward with the normal course

of life are inherent risks of engaging in the immigration process," which "weigh[s] against finding that the third and even fifth *TRAC* factors favor a plaintiff" (internal citation omitted). No. 8:22-cv-2965-MSS-TGW, 2023 WL 12167543, at *13 (M.D. Fla. Aug. 4, 2023); *see also Otto*, 2023 WL 2078270 at *12.

***Relief Would Impede Agency Priorities.*** Plaintiffs effectively ask this Court to compel USCIS to realign its resources and priorities to take steps to adjudicate their applications before others, trampling on USCIS's independent discretionary workflow decisions and allowing Plaintiffs to jump the line above those patiently awaiting their turn. Courts have repeatedly rejected these actions absent sufficient justification to do so. *See, e.g. Otto*, 2023 WL 2078270 at *5 (finding *TRAC* factor four to favor the government where skipping the line produced no net gain).

***No Bad Faith.*** As Plaintiffs have not alleged bad faith *TRAC* factor six either favors Defendants or remains neutral. *Otto*, 2023 WL 2078270, at *5.

Because Plaintiffs fail to allege sufficient facts to state a claim for relief, this Complaint should be dismissed under Federal Rule 12(b)(6).

B. Count V should be dismissed for failure to state a claim under Section 706(2) of the APA because Plaintiffs fail to state a claim that the Challenged Policies are arbitrary and capricious.

As discussed *supra*, two of the Challenged Policies have been vacated and are no longer being treated as if in effect. The only remaining Challenged Policy implicated in this lawsuit that was not impacted by the *Dorcas* litigation is PM-602-0199, which explains the government's "preference for aliens seeking to immigrate through the ordinary immigration process from abroad through consular processing."

PM-602-0199, p. 3. Put simply, it does not apply to CAA adjudications and therefore does not apply to Plaintiffs here. PM-602-0199 is a memorandum that documents the government's preference that aliens utilize the ordinary immigration process, consular processing, which requires that an individual leave the United States. *See* PM-602-0199, p. 3. CAA-applicants, however, are required to be physically present in the United States in order to adjust their status. . *See* Pub. L. No. 89-732, § 1 (describing eligibility under the CAA). Because Plaintiffs have not sufficiently pled that there is any policy being applied to them at all, they have not sufficiently pled that such policy is being applied to them in an arbitrary and capricious manner sufficient to warrant relief under the APA. Count V should be dismissed under Fed. R. Civ. P. 12(b)(6).

**CONCLUSION**

This Court lacks jurisdiction to grant the relief Plaintiffs seek. Furthermore, Plaintiffs fail to state a claim for relief. The Third Amended Complaint should be dismissed in its entirety under Federal Rules of Civil Procedure 12(b)(1), (6).

Date: Aug. 17, 2026

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: */s/Amanda Saylor*
Amanda Saylor
Assistant United States Attorney
Lead Counsel for Defendants
Florida Bar No. 1031480
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6020
Email: Amanda.Saylor@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF electronic filing system which will furnish copies of these documents to all registered counsel of record.

Dated: August 17, 2026

Signed:

*/s/Amanda Saylor*
Amanda Saylor
Assistant United States Attorney