**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

IDANIA M. ACOSTA REYNOSO,
et al.,

Plaintiffs,

v. Case No. 8:26-cv-1314-KKM-NHA

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES
et al.,

Defendants.

---

# ORDER

Ordinarily, applicants for immigration-status adjustment must wait their turn before the United States Citizenship and Immigration Services (USCIS). This lawsuit principally concerns whether applicants under the Cuban Adjustment Act (CAA) may instead force USCIS to adjudicate their applications ahead of the queue. They cannot. Adjudication pace rests within USCIS's discretion.

The plaintiffs are 143 Cuban nationals who allege that the United States Citizenship and Immigration Services'[1] "unreasonable delay in deciding their

---

[1] The plaintiffs also name as defendants USCIS Director Joseph Edlow, the Department of Homeland Security (DHS), and DHS Secretary Markwayne Mullin. *See* 3d Am. Compl. (Doc. 33) ¶¶ 154–157.

long-pending [Form I-485] applications for lawful permanent residence pursuant to the Cuban Adjustment Act of 1966" and their Form I-765 applications for employment authorization violates the Administrative Procedure Act (APA) and the Mandamus Act. *See* 3d Am. Compl. (Doc. 33) ¶¶ 1–4, 207–240. The defendants move to dismiss the claims, arguing that I lack subject-matter jurisdiction and that some of the claims fail on the merits. *See* MTD (Doc. 47). The plaintiffs respond. Resp. (Doc. 48). In the end, I agree with the defendants that I lack subject-matter jurisdiction because application-processing pace is committed to USCIS' discretion, the challenged guidance is not final agency action, and some of the plaintiffs' claims are moot. So I dismiss the plaintiffs' claims without prejudice.

## I. BACKGROUND

The plaintiffs "were lawfully admitted or paroled into the United States" and have filed petitions for adjustment of status (Form I-485) under the CAA and Form I-765 petitions for employment authorization (EAD) under "their pending CAA petitions." 3d Am. Compl. ¶ 2. Despite the plaintiffs' "complian[ce] with all USCIS requirements," in certain cases the "USCIS has failed to render adjudicative decisions on the Plaintiffs' CAA and EAD petitions" for over three years. *Id.* ¶ 4. The plaintiffs allege that they remain "in a state of prolonged and indefinite immigration limbo" and "face gaps in

employment authorization" until USCIS adjudicates their petitions. *Id.* ¶¶ 4–5.

According to the plaintiffs, their delayed adjudications are being "exacerbated" by three USCIS policy memoranda, PM-602-0192,[2] PM-602-0194,[3] and PM-602-0199.[4] *Id.* ¶¶ 1, 180, 193–95, 216–18. A district court in Rhode Island has since vacated two of these policies, PM-602-0192 and PM-602-0194. *See Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.*, No. 26-CV-132-JJM-PAS, 2026 WL 1622708, at *8 (D.R.I. June 5, 2026), *judgment entered*, No. 26-CV-132-JJM-PAS, 2026 WL 1695954 (D.R.I. June 11, 2026). Consistent with that ruling, USCIS announced that it is not enforcing PM-602-0192 and PM-602-0194. USCIS, *Court Order on Hold Policies* (June 12, 2026).[5] The third policy memorandum, PM-602-0199, remains in effect.

The plaintiffs filed this action on May 4, 2026, asserting claims under the APA: an unreasonable delay claim for their Form I-485 petitions (Count I)

---

[2] https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf [https://perma.cc/8BHC-XEW6] (last visited October 15, 2026).

[3] https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf [https://perma.cc/X8MY-7LS2] (last visited October 15, 2026).

[4] https://www.uscis.gov/sites/default/files/document/memos/PM-602-0199-AdjustmentOfStatusAndDiscretion-20260521.pdf [https://perma.cc/5LNT-99DF] (last visited October 15, 2026).

[5] https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies [https://perma.cc/K5K8-6TR9] (last visited October 15, 2026).

and Form I-765 petitions (Count II), as well as a claim that the defendants' "Benefits Hold Policy, as enshrined in PM-602-0192, and its successor and related memoranda," is arbitrary and capricious (Count V). *See* 3d Am. Compl. ¶¶ 219–32, 243–53. The plaintiffs also bring claims under the Mandamus Act, 28 U.S.C. § 1361 (Counts III and IV). *See id.* ¶¶ 233–42.

The plaintiffs filed a motion for a temporary restraining order and preliminary injunction to enjoin the defendants "from imposing . . . PM 602-0192, PM-602-0194, and PM-602-0199" and compelling the defendants "to adjudicate the Plaintiffs' pending [applications] . . . within 30 days of this Court's order." TRO & PI Mot. (Doc. 25). I denied both motions. *See* TRO Order (Doc. 29); PI Order (Doc. 41). The defendants now move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* MTD at 1.

## II. LEGAL STANDARD

A defendant may challenge a court's subject-matter jurisdiction at the pleading stage by moving to dismiss under Rule 12(b)(1). *See* FED. R. CIV. P. 12(b)(1). A facial attack on jurisdiction—like the one the defendants mount here, *see* MTD at 1—"challenges whether a plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citation omitted). And when agency

action is committed to agency discretion by law, is not final, is discretionary, or is no longer operative, *see Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1283 (11th Cir. 2016); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003); *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1036–37 (11th Cir. 2021); *Florida v. Department of Health And Hum. Services*, , No. 25-12095, 2026 WL 2618386, at *8 (11th Cir. Sept. 4, 2026), then, I lack subject matter jurisdiction as to any APA and the Mandamus Act claims and I "must dismiss the complaint," *see Harrington v. Glidewell*, No. 24-13877, 2026 WL 103990, at *4 (11th Cir. Jan. 14, 2026) (citing *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1235 (11th Cir. 2008)), without reaching the merits of the Rule 12(b)(6) objection, *see DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008).

## III. ANALYSIS

The defendants argue that the plaintiffs' complaint should be dismissed for lack of subject-matter jurisdiction because pace determinations under the CAA fall within USCIS' discretion, the challenged guidance is non-final agency action, and many of the claims are now moot. *See generally* MTD. As explained below, I lack subject-matter jurisdiction over the plaintiffs' claims.

### A. CAA Status Adjustment Pace is Committed to USCIS' Discretion.

A person who has suffered a legal wrong because of agency action may generally seek judicial review under the APA, including for unreasonable delay. *See* 5 U.S.C. § 702; *id.* § 706(1). Federal courts cannot scrutinize agency action, though, when Congress bars such review. *See Kanapuram v. Dir., US Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1306 (11th Cir. 2025). Under the APA, Congress curtails jurisdiction to review an agency's action whenever the challenged action "is committed to agency discretion by law." *See* 5 U.S.C. § 701(a); *Butka*, 827 F.3d at 1283. Here, judicial review is barred as to the processing speed of status adjustments under the CAA because the CAA commits the adjudication pace to USCIS' discretion.

An action falls within an agency's unreviewable discretion whenever "the statute at issue does not provide a meaningful standard against which to judge the agency's exercise of discretion." *See Butka*, 827 F.3d at 1283–84 (citation omitted); *Vega v. Noem*, No. 25-CV-26047-RAR, 2026 WL 1740033, at *3 (S.D. Fla. Mar. 25, 2026) (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). For instance, a "grant" of "general authority," without any specification about the processes needed to exercise that authority, commits to the agency's discretion the choice over what procedures to employ in exercising that underlying authority. *See Lenis v. U.S. Atty. Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008).

The CAA commits to USCIS such discretion over CAA status adjustments as to the status-adjustment pace that the plaintiffs challenge here. *See Garriga v. Hackbarth*, 548 F. App'x 559, 561 (11th Cir. 2013). Under the CAA, "the status of any alien," who fits within the CAA's criteria, "may be adjusted by [USCIS], in [its] discretion." Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161 (1966). By its plain terms, the CAA "gives complete discretion over the adjustment of immigration status to USCIS," including over the pace at which CAA applications are processed. *See Vega*, 2026 WL 1740033, at *3; *see also Valdivia v. U.S. Atty. Gen.*, 380 F. App'x 793, 795 (11th Cir. 2010) ("[A]n adjustment of status under the CRAA is a discretionary decision."). And nothing in the CAA provides a measuring stick to assess if USCIS moves too slowly in adjudicating status adjustments. *See Butka*, 827 F.3d at 1283–84.

If anything, the CAA's text leaves to USCIS' discretion "not only the ultimate decision to approve or deny [a Form I-485 status adjustment], but also actions taken in the course of the decision-making process—including the pace at which that process is undertaken." *Cf. Kanapuram*, 131 F.4th at 1307 (analyzing identical statutory language under 8 U.S.C. § 1255(a) and finding that it granted discretion to USCIS to control the pace of Form I-485 status adjustments) (citation omitted); *Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1256 (S.D. Fla. 2022) ("Because the pace of USCIS' processing of I-130 Petitions is left to the sound discretion of the agency, and because such pacing neither

qualifies as or is subject to a nondiscretionary act, the Court lacks the jurisdiction to hear the claim."). In other words, the CAA leaves the "complicated balancing" of which applications to adjudicate first to USCIS' discretion. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993) (citation omitted).

The plaintiffs argue that CAA delays are measurable against the APA's requirement that mandatory agency action be completed within a "reasonable time." *See* Resp. at 6–9, 17–19 (citing 5 U.S.C. § 555). But that argument fails because nothing in the CAA's text demands that USCIS must render decision on a status-adjustment application, much less on a set timeline, and an unreasonable-delay claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis added). So even though the CAA permits USCIS to adjust an applicant's status only after an applicant meets defined criteria, nothing in the CAA mandates when, if ever, USCIS renders final decision on the application. *See* Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161. (1966); *Perez v. U.S. Bureau of Citizenship & Immigr. Servs. (USCIS)*, 774 F.3d 960, 965 (11th Cir. 2014) ("The ultimate decision whether to grant adjustment of status under the CAA is discretionary."). Thus, CAA adjudications fall outside unreasonable-delay claims because resolution of an application on any timeline "is not demanded

by law" but is instead committed to USCIS' discretion. *See Norton*, 542 U.S. at 65 (2004).

The same goes for Form I-765 petitions, which may be filed "[d]uring the pendency of the I-485 application." *Kondapally v. U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 10, 15 (D.D.C. 2021); *see id.* at 26 ("[C]ourts have routinely held that approving or denying the I-765 application . . . and deciding whether to extend the EAD period to encompass the pendency of any review, are decisions committed to USCIS's discretion and outside the purview of judicial review."); MTD at 9 (collecting cases holding as much). So, in the absence of any parameters within the CAA for when USCIS takes too long to adjudicate a status adjustment, I conclude that the CAA commits status-adjustment pace to USCIS' discretion, and I lack jurisdiction as to the plaintiffs' claims for delay under the APA. *See* 5 U.S.C. § 701(a).

For like reasons, the discretionary nature of CAA status-adjustment pacing undermines any jurisdiction for the plaintiffs' claims under the Mandamus Act. Under the Mandamus Act, *see* 28 U.S.C. § 1361, a district court maintains jurisdiction to grant mandamus "only if (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Serrano v. U.S. Atty. Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011); *Hakki*, 7 F.4th at 1037 (holding that the court had no jurisdiction under the Mandamus Act when the agency had no "clear duty

to act”). Setting to the side whether the plaintiffs have a right to expedited CAA adjudication or whether an adequate remedy is available, they fail to establish that USCIS has a clear merely “ministerial” duty to adjudicate status adjustments on the plaintiffs’ preferred timeline. *United States v. Davis*, 359 F. App’x 128, 129 (11th Cir. 2010). In fact, the CAA never provides that status adjustments must be completed on any set timeline at all. *See* Cuban Adjustment Act, Pub. L. No. 89-732, 801 Stat. 1161; *see also Vega*, 2026 WL 1740033, at *4 (denying mandamus relief where the plaintiff failed to “demonstrate[] a clear right to the relief requested in large part because there is no congressionally or administratively prescribed timeframe within which USCIS has a duty to process or adjudicate I-485 petitions”) (citation modified); *Patel v. Garland*, 596 U.S. 328, 332 (2022) (explaining that status adjustment is discretionary, not mandatory, and always given as “a matter of grace”). As with the jurisdictional defect under the APA, the CAA’s textual commitment of discretion—without any reference to a mandatory timeline for adjudication—forecloses that USCIS must process applications on an expedited timeline. *See id.*; *Valdivia*, 380 F. App’x at 795; *cf. Kanapuram*, 131 F.4th at 1307; *FCC v. Brown*, No. 26A476, 2026 WL 3080098, at *2 (U.S. Oct. 14, 2026) (per curiam) (explaining that mandamus is likely “inappropriate” whenever an agency is “not [statutorily] obligate[d] . . . to act within a particular timeframe” because the lack of a statutory timeline leaves the

setting of procedural requirements, like processing timelines, to agency "discretion").[6] In sum, because I lack jurisdiction under the APA and the Mandamus Act as to the plaintiffs' alleged delay in processing CAA status adjustments, I dismiss Counts I, II, III, and IV from the complaint for lack of subject-matter jurisdiction.[7]

**B. PM 602-0199 is Not Final Agency Action.**

As to the plaintiffs' claims that one of the challenged guidance documents—PM 602-0199—is arbitrary and capricious, the defendants argue that I lack jurisdiction to review this guidance document because it does not

[6] Beyond that, the defendants argue that many of the plaintiffs' challenges are now moot because USCIS has rendered decision on or begun the adjudicative process for their Form I-485 or Form I-765 applications. Because I find jurisdiction lacking on alternative grounds, I need not reach this argument. *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023).

[7] In denying the plaintiff's motion for a preliminary injunction, I preliminarily concluded that the commitment of discretion under the CAA implicated 8 U.S.C. § 1252(a)(2)(B)'s bar on judicial review. *See* PI Order at 13–15. Although I still conclude that jurisdiction is barred under the APA and the Mandamus Act as to the plaintiffs' claims because the adjustment of status is committed to agency discretionary, I am less certain—at least as a matter of precedent—that Section 1252 independently bars jurisdiction because "the CAA is not part of [the INA]," *see Perez*, 774 F.3d at 967. Section 1252(a)(2)(B) only covers discretionary decisions under specified provisions of the INA, and the only Eleventh Circuit decision since *Perez* to hold that 8 U.S.C. § 1252(a)(2)(B) barred jurisdiction under the CAA did so on party presentation grounds, not on the CAA's unique statutory relationship with the INA, *see Daniel v. Castro*, 662 F. App'x 645, 649 (11th Cir. 2016). To be sure, the Eleventh Circuit has endorsed that Section 1252 applies to discretionary decisions under the CAA in the past, *see Valdivia*, 380 F. App'x at 795, and if the logic of the Eleventh Circuit's other Section 1252 decisions applied to the CAA, *see Kanapuram*, 131 F.4th at 1309, it would bar the plaintiffs unreasonable delay claim. But in the light of *Perez*, I rest my jurisdictional analysis on the APA and Mandamus Act.

amount to reviewable "final agency action," *see* Resp. at 10–12. *See* 5 U.S.C. § 704. I agree. For guidance to constitute final agency action under the APA, it must "mark the consummation of the agency's decision-making process" and it must determine "rights or obligations" or cause "legal consequences [to] flow" from it. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citation omitted). PM 602-0199 does neither.

To start, PM 602-0199 only reminds USCIS officers that certain status adjustments are discretionary decisions; it makes no firm or final directives about how that discretion should apply to applicants. And PM 602-0199 instructs that any legal consequences or rights determinations an applicant might face following a status adjustment flow only from the status-adjustment decision and not PM 602-0199's directive that officers employ discretion in making that decision. *See id.* (stating that PM 602-0199 "may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner"). Importantly then, even setting aside the memorandum's disclaimers, the plaintiffs fail to identify any part of the memorandum marking the consummation of USCIS decision making, determining their rights, or precipitating legal actions. Absent final agency action, I lack jurisdiction under the APA to review PM 602-0199's lawfulness. *See* 5 U.S.C. § 704.

### C. The Other Challenged Guidance Documents are no Longer Operative, Making the Plaintiffs Challenge to Them Moot.

In addition to challenging PM 602-0199, the plaintiffs also challenge PM 602-0192 and PM 602-0194 as arbitrary and capricious under the APA, *see* 5 U.S.C. § 706, and seek declaratory and injunctive relief as to those guidance documents. 3d Am. Compl. at 107–108. The defendants contend, however, that I cannot consider the merits because PM 602-0192 and PM 602-0194 are no longer operative, rendering the plaintiffs' challenge to these documents moot. *See* MTD at 14. Again, I agree.

Mootness is a threshold issue that flows from Article III's " 'Cases' or 'Controversies.' " requirement. *See FBI v. Fikre*, 601 U.S. 234, 240 (2024) (quoting U.S. CONST., art. III, §§ 1, 2). "[A] case must be dismissed as moot if events that occur subsequent to the filing of a lawsuit deprive the court of the ability to give the plaintiff meaningful relief." *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1283 (11th Cir. 2024) (citation omitted), *cert. denied*, 146 S. Ct. 607 (2025); *L.E. by & through Cavorley v. Scamihorn*, 187 F.4th 1266, 1277 (11th Cir. 2026) ("[M]ootness—*not* standing—is the doctrine that deals with developments after a case has been filed."). In other words, for a case to be live, a federal court must continue to be able to "provide redress in some palpable way" throughout the litigation. *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). For claims

that seek injunctive or declaratory relief under the APA, this means that challenged guidance must remain operative throughout the litigation because, once withdrawn, there is no further relief the Court can provide to the parties. *See Purpose Built Fams. Found., Inc. v. United States*, 95 F.4th 1346, 1352–53 (11th Cir. 2024) (explaining that "[a]gencies can render moot" an APA challenge by withdrawing the challenged action).

Here, USCIS mooted the plaintiffs' challenge to PM 602-0192 and PM 602-0194 when it announced that both "should be treated as if they are not in effect." *See* USCIS, *Court Order on Hold Policies* (June 12, 2026), https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies [https://perma.cc/K5K8-6TR9] (last visited October 15, 2026); *see also* PM-602-0192 (stating that document is no longer in effect); PM-602-0194 (same). Put differently, because USCIS blocked these documents operative force, in the light of their purported vacatur, "the plaintiffs face no risk of being subjected to these provisions in the future." *See Florida*, 2026 WL 2618386, at *9 (11th Cir. Sept. 4, 2026). In short then, because providing an injunction blocking the enforcement of the guidance or a declaration that the guidance is unlawful would provide no meaningful relief, *see Purpose Built Fams. Found., Inc.*, 95 F.4th at 1352–53, the plaintiffs' challenges to these documents are moot.

## IV. CONCLUSION

Because I lack jurisdiction, the plaintiffs must wait their turn before USCIS, and I must dismiss their claims. *See Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) (explaining that where a court lacks jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing" the case).[8]

Accordingly, it is **ORDERED:**

1. The defendants' Motion to Dismiss (Doc. 47) is **GRANTED**.
2. This action is **DISMISSED** without prejudice for lack of subject-matter jurisdiction.
3. The Clerk is directed to **ENTER JUDGMENT**, which shall read, "This case is dismissed without prejudice."
4. The Clerk is further directed to **TERMINATE** all deadlines, pending motions, and hearings, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on October 17, 2026.

Kathryn Kimball Mizelle
Kathryn Kimball Mizelle
United States District Judge

---

[8] Because I conclude that jurisdiction is lacking over the plaintiffs' claims, I need not reach whether the plaintiffs are improperly joined under Federal Rules of Civil Procedure 20 and 21. *See* PI Order at 19–20.